[Sac. No. 1429. In Bank.—May 13, 1907.]

M. P. STEIN, Respondent, v. W. J. ARCHIBALD, Administrator of the Estate of J. F. Archibald, Deceased, Appellant.

CONTRACTS—RULES OF CONSTRUCTION—SURROUNDING CIRCUMSTANCES.— It is a well-settled principle applicable to the construction of contracts, that where one construction would make the contract unreasonable, unfair, or unusual and extraordinary, and another construction, equally consistent with the language, would make it reasonable, fair, and just, that the latter construction is the one which must be adopted. It is also a principle of construction with respect to ambiguous contracts, that the circumstances surrounding and known to both parties at the time of the execution of the contract may be taken into consideration in determining the meaning intended to be conveyed.

ID.—SPECIFIC PERFORMANCE—AGREEMENT TO SELL HALF INTEREST IN LAND—PURCHASE PRICE AT SPECIFIED PRICE PER ACRE.—In an action against the vendor to enforce the specific performance of a contract for the conveyance of a half interest in a large tract of land, it is *held*, in view of the situation of the parties and the surrounding circumstances at the time of the execution of the contract, that a provision in the contract giving the vendee the option of purchasing the land within a stated time, upon the payment to the vendor of ''four dollars per acre for the undivided one half of all said described lands,'' should be construed as requiring the vendee to pay four dollars per acre for the entire area, although he receives therefor only an undivided one-half interest. The phrase ''four dollars per acre'' refers to the area and not to the interest, and the purchase price is found by computing the rate per acre upon the entire area of the land and not upon one half of such area. Such construction should also be given to the contract without aid from the surrounding circumstances.

ID.—CONTRACT MUST BE REASONABLE AND FOR ADEQUATE CONSIDERATION. —Specific performance of a contract to convey land will not be decreed unless the contract is just and reasonable and based upon an adequate consideration.

APPEAL from a judgment of the Superior Court of Madera County and from an order refusing a new trial. W. M. Conley, Judge.

The facts are stated in the opinion of the court.

Frank H. Farrar, for Appellant.

Nicol & Orr, and Francis A. Fee, for Respondent.

SHAW, J.—This is an action to enforce specific performance of a contract for the conveyance of certain lands to the plaintiff. The action was begun against J. F. Archibald, the vendor in the contract. He died after the trial, and the defendant, W. J. Archibald, as administrator of his estate, was substituted as defendant. Judgment was given for the plaintiff, and from that judgment and an order denying a motion for a new trial the defendant appeals.

The contract was executed on October 9, 1897, and is in the following words, the names of the parties being given instead of their designation as party of the first part or second part, respectively, as it appears in the contract, and the introductory paragraph being omitted:

"The said J. F. Archibald in consideration of the agreements hereinafter expressed to be performed by M. P. Stein or his assigns, has agreed and does hereby agree at any time within three years from this date to sell and convey to said M. P. Stein an undivided one-half interest of, in and to all those certain lands, situate in the county of Madera, state of California, and described as follows, to wit:" (here is inserted a description of the lands embracing 9680 acres).

"And if said M. P. Stein or his assigns, shall at any time within three years from this date pay to said Archibald $4 per acre for the undivided one half of all said described lands, then and in that event and upon such payment being made the said Archibald hereby agrees to make, execute and deliver to said Stein or his assigns, a good and sufficient deed of grant, bargain, and sale, conveying and assuring to said Stein, or his assigns, the undivided one half of all said described lands free and clear of any and all encumbrances and liens done, made or suffered by the said Archibald;

"It is hereby further agreed that if during the term of this option and before said Stein or his assigns shall have made the payment above specified, a chance occurs affording to said Archibald the opportunity to sell said described lands at a sum in excess of the amount by said Archibald paid to the Stockton Savings & Loan Society for said lands, then and in that event, and notwithstanding this option, the said Archibald may sell said lands and the whole thereof, but he shall pay to the said Stein or his assigns the one half of the net profits arising from such sale; provided, however, that he, said Stein, shall have an equal voice in making such sale and no sale shall be made without his being first consulted and giving consent thereto.

"It is hereby further agreed that during the life and term of this agreement said Stein is to bear equally with Archibald all the expenses incurred in farming said lands, and is to have and receive one half of the gross income arising therefrom.

"It is hereby further agreed that in the event said Stein at any time during the term and life of this agreement shall desire to sell and dispose of his interest in said lands under this agreement, he shall give to Archibald the option of purchasing the same and shall not dispose thereof until the opportunity shall have been first given to said Archibald."

On the day this agreement was made Archibald had purchased the land from the Stockton Savings and Loan Society at the price of four dollars per acre, amounting to $38,720, for which he had paid ten thousand dollars in cash, and for the balance of $28,720 had given his note bearing seven per cent annual interest. Before the expiration of the three years named in the option it was extended for another period of two years. The court in its findings declared that prior to the expiration of this two years the plaintiff, Stein, had made due offer of performance to the vendor, Archibald, in pursuance of the contract; that he was entitled to a conveyance from said Archibald on payment of the amount agreed to be paid under the terms of the contract; and that this sum as expressed in the contract and as construed by the court was $19,280, or one half of the original purchase price at which the whole interest in the land was sold by the Stockton Sav-

ings and Loan Society to Archibald, less one hundred and sixty dollars. This one hundred and sixty dollars was deducted because the court found that the area of the land was only 9,640 acres instead of 9,680 acres, as it was supposed to be when Archibald executed the note for the balance of the purchase price to the Savings and Loan Society. The decree was that upon payment of this sum of $19,280 the plaintiff shall receive the conveyance of the undivided one-half interest in the land described in the contract.

The important question in the case is the construction to be given to the option contract with respect to the amount to be paid thereunder as the price of the undivided one-half interest in the land described. The plaintiff claims that its meaning is that the plaintiff was to pay at the rate of two dollars per acre on the whole number of acres. The defendant's contention is that the contract calls for the payment of the sum of four dollars an acre, on the whole acreage of the land. It is a well-settled principle applicable to the construction of contracts that where one construction would make the contract unreasonable, unfair, or unusual and extraordinary, and another construction, equally consistent with the language, would make it reasonable, fair and just, that the latter construction is the one which must be adopted. It is also a principle of construction with respect to ambiguous contracts, that the circumstances surrounding and known to both the parties at the time of the execution of the contract may be taken into consideration in determining the meaning intended to be conveyed. Conceding for the present that the contract in question is ambiguous in this respect, we think it is clear that the construction contended for by the plaintiff cannot be given to it. The option was to continue for three years and was afterwards extended for two years more. The vendor, Archibald, had on the same day bought the land for the price of four dollars per acre, paying ten thousand dollars down and agreeing to pay the balance in one year, with seven per cent interest. A note for this balance was renewed from year to year, and does not appear to have been paid. The interest thereon amounted to over two thousand dollars a year, and it appears that Archibald from year to year paid this interest. Under the terms

of the option contract the purchaser, Stein, became, in practical effect, an immediate owner of a one-half interest in the property. He was to pay one half of the expenses of farming it and was to receive one half of the receipts therefrom. From the evidence it appears to have been contemplated by the parties that Archibald was to personally superintend the farming operations. In effect, therefore, Archibald gave to Stein the privilege of purchasing a half interest in the land at any time within five years from the date of his own purchase, and gave him immediate possession of the half interest in the lands agreed to be conveyed, and gave him also the benefit of his own personal supervision of the farming operations thereon and of the profits thereof during the time which might intervene between the date of the option and the day when Stein should choose to avail himself thereof, and agreed to accept as the price of such purchase the then present value of the land without interest, while at the same time Archibald was himself paying seven per cent interest on the purchase money which he had agreed to pay to the Loan Society therefor. It is precisely the same in this respect as an agreement to sell land for a fixed price payable in five years without interest, the purchaser to have the immediate possession and use thereof. It was in effect a present or gift from Archibald to Stein of some eight thousand dollars of interest which he himself paid on the balance of the purchase price to the Stockton Savings and Loan Society, and in addition thereto a one half of all the benefits in the way of interest or income from the ten thousand dollars cash which he had paid on the price thereof to the said society. It is, of course, not impossible that such an agreement might have been made with full intention to give it this effect. Such agreements are sometimes made when the owner is anxious to sell, and makes a sacrifice for that purpose. But it is scarcely conceivable that a landowner would give another an option to purchase on such terms where the price fixed was the same as that which the owner himself had paid for the land immediately before the option was given, and particularly where he had bought on credit and was paying interest on that price. If the contention of the plaintiff is correct this was the agreement which was made. That such an agreement would be unfair

and harsh under any ordinary circumstances must be conceded. There are no circumstances appearing in the record to explain such a remarkable bargain.

On the other hand, it would not be unreasonable for an owner to give an option extending over a number of years and give the other party immediate possession, where the price agreed to be paid was in excess of the present value, and was large enough to give the owner a profit sufficient to compensate him for the loss of interest on the money and the rents and profits of the land in the mean time. Under the circumstances the option contract must be construed so as to give it the latter effect rather than the former, if it is fairly susceptible of that construction.

We think that it is not only fairly susceptible of that construction, but that it is not fairly susceptible of any other, even when considering its language alone. The contract describes 9,640 acres of land, according to the findings of the court. The number of acres is not stated in the contract, but after describing the land its language is that if Stein "shall at any time within three years from this date pay to (Archibald) four dollars per acre for the undivided one half of all of said described lands," then he shall be entitled to a conveyance of said undivided one half from said Archibald. The previous paragraph contains an agreement on the part of Archibald to sell and convey to Stein "an undivided one-half interest of, in and to all those certain lands," describing them. An undivided one-half interest in an acre of land is an interest which extends over the entire area. If a party agrees to buy the undivided one-half interest in one hundred acres of land and agrees to pay four dollars per acre for that interest, it would seem clear that the effect of such an agreement is that he shall pay four dollars per acre for the entire area, although he receives therefor only an undivided one half interest. The phrase "$4 per acre" refers to the area and not to the interest, and the price is found by computing the rate per acre upon the entire area of the land and not upon one half of such area. This is the plain meaning of the words of the contract without aid from the surrounding circumstances. And when considered in connection with the surrounding circumstances and the evident advantage which the other construction would give to the purchaser, no

CLI Cal.—15

other construction is admissible except that contended for on behalf of the defendant. A fair construction of the contract is that Archibald intended to give plaintiff the privilege of purchasing the half interest, at any time within the period of the option, upon the payment of four dollars for each acre thereof, but that, in the mean time, if either party could make sale of the entire interest at an advance over the original purchase price of four dollars per acre, they were to have equal advantage of such sale, and that, during the period that the option ran, both parties should have equal advantage from the products of the land. Thus construed it is neither unfair nor unreasonable.

The conclusion of the court that the plaintiff was entitled to a conveyance on the payment of $19,280, or at the rate of two dollars per acre, for an undivided one-half interest thereof, is not justified by the contract sued upon.

Furthermore, it is a principle of equity that specific performance of a contract to convey land will not be decreed unless it is just and reasonable and based upon an adequate consideration. (Civ. Code, sec. 3391.) From what we have seen, it is plain that the consideration which the plaintiff claims he agreed to pay for the land would not be adequate, and that to enforce performance thereof would be both unjust and unreasonable to the vendor, there being no circumstances which tended to explain the reason for giving such an unfair contract, or which suffice to show that, notwithstanding its apparent unfairness, it was nevertheless just and reasonable. The court in the application of this principle of equity should have refused a decree for specific performance.

The judgment and order are reversed.

Angellotti, J., Henshaw, J., and Lorigan, J., concurred.

McFarland, J.—I concur in the judgment of reversal.