17506

Sherwood MISHOE, Plaintiff-Respondent, v. GENERAL MOTORS ACCEPTANCE CORPORATION, Defendant-Appellant

(107 S. E. (2d) 43)

*Messrs. H. E. McCaskill,* of Conway, and *Robert M. Hollings,* of Charleston, *for Appellant,*

*James P. Stevens, Esq.,* of Loris, *for Respondent,*

February 17, 1958.

PER CURIAM.

On August 6, 1954, Sherwood Mishoe, the respondent herein, purchased from Prince Motor Co., Inc., of Tabor City, North Carolina, a new 1954 Chevrolet automobile for a total price of $2,133.99, of which $650.00 was paid at the time. The deferred balance of $1,483.99 was payable $600.00 on September 6, 1954 and $883.99 on August 6, 1955. The usual conditional sales contract or chattel mortgage was executed and delivered to the Prince Motor Co., Inc., by the respondent. On the same day Prince Motor Co., Inc., sold and assigned this conditional sales contract or chattel mortgage to General Motors Acceptance Corporation, the appellant herein, and guaranteed the payment thereof. The total time price of the automobile purchased included finance charges and car insurance.

The respondent sought damages against the appellant for its alleged fraud and deceit, and the action resulted in a verdict for the respondent in the sum of $800.00 actual damages, and $700.00 punitive damages.

The complaint alleges the purchase by the respondent of the automobile in question from Prince Motor Co., Inc., and the payment of $650.00 as a down payment, and the execution by the respondent of a conditional sales contract provid-

ing for the subsequent payments on the said automobile on September 6, 1954 in the amount of $600.00, and on August 6, 1955 of the balance of $833.99. It is also alleged that on September 10, 1954, the respondent being in default of the payment due on September 6, 1954, that a representative acting in behalf of the appellant made false representations to the respondent which induced him to go to Tabor City, North Carolina, where the appellant took possession of the said automobile covered by the conditional sales contract, in consequence of which the respondent was damaged to the extent of his equity in said automobile. The complaint alleges that the respondent tendered to the representative of the appellant the amount due on September 6, 1954, with the interest for a period of four days; and that the said tender was refused by the representative of the appellant, and that

"he would like for the plaintiff to accompany him to Tabor City, North Carolina, so that the amount with interest could be correctly computed and the account handled satisfactorily; that at the time the said statement was made, the representative of the defendant knew the statement was false in fact, and knew that the amount would not be computed at Tabor City, North Carolina, with interest, and at the time it was made with a false intent to induce the plaintiff to accompany him to Tabor City, North Carolina, and was made with the intent to injure the plaintiff, and the said false statement was made with the intent that the plaintiff rely on said false statement to his detriment."

The complaint further alleges that the foregoing representations were known to be false when made by the appellant and that its representative knew that the amount, with interest would not be computed at Tabor City, North Carolina, and it was made with a false intent to induce the respondent to accompany him to Tabor City, North Carolina, with the intent to injure him. The complaint alleges, as damages, as a result of said representations, that his automobile was seized by the appellant. The appellant filed an answer denying the material allegations of the complaint except the

existence of default on the part of the respondent in the payment of the amount due under the conditional sales contract, and the repossession of the automobile because of said default.

This case came on for a jury trial before the County Court of Horry County on May 22, 1956. The appellant made a motion for a nonsuit at the close of the testimony by the respondent, and for a directed verdict as to both actual and punitive damages at the close of all the testimony. These motions were refused by the County Judge, who ruled that a proper construction of the conditional sales contract involved in this case should be interpreted as giving to the respondent a thirty day period of grace, commencing on the date when payment under the contract became due, only after which the appellant would have a right to the possession of the automobile under the contract. The trial Judge, in his charge to the jury, stated that he had ruled, as a matter of law, that the respondent was not in default in the payment on the conditional sales contract on September 10, 1954, at the time of the repossession of said automobile by the appellant. The appellant moved for judgment *non obstante veredicto* and alternatively for a new trial. All of these motions were refused. Timely notice of intention to appeal to this Court was given. The appellant has filed nineteen exceptions to the rulings of the trial Judge and they raise the following questions: (1) Did the trial Judge commit error in holding as a matter of law, and so charging the jury, that the respondent was not in default in payment under the conditional sales contract at the time of the repossession of the automobile by the appellant, and in charging the jury it could consider this circumstance in determining the existence of fraud on the part of the appellant, and in fixing the damages to be awarded the respondent? (2) Were the representations as made by the appellant actionable as fraud? (3) Did the representations of the appellant cause the respondent legal damage?

The provisions of the conditional sales contract or chattel mortgage, pertinent to this appeal, are as follows:

"3. Time is of the essence of this contract. Any instalment or amount payable hereunder, if unpaid five (5) days after it becomes due, shall include interest thereon at the highest lawful contract rate from the due date. In the event that any instalment shall not have been paid within thirty (30) days after it becomes due and payable the purchaser expressly acquiesces in the right of the holder of this contract to delegate a representative to endeavor in person to collect such unpaid instalment and, in acknowledgment thereof, the purchaser hereby agrees to pay a further charge in a sum equal to give (5%) per cent of such unpaid instalment, but such charge shall neither be less than $1.00 nor exceed $5.00 in any event. The purchaser agrees, in the event that this contract is placed in the hands of an attorney for collection, to pay fifteen (15%) per cent of the amount due or such lesser sum as may be permitted by law as attorney's fees.

"4. In the event purchaser defaults on any payment due on this contract * * * the seller shall have the right at his or its election to declare the unpaid balance, together with any other amount for which the purchaser shall have become obligated hereunder, to be immediately due and payable. Further, upon such default or event, seller or any sheriff or other officer of the law may take immediate possession of said property without demand (possession after default being unlawful), including any equipment or accessories thereto, and for this purpose seller may enter upon the premises where said property may be and remove the same. * * *"

The answer to the first question above stated depends upon a proper construction of paragraph 3 of the conditional sales contract. The function of the Courts is to construe contracts of litigants and not to make them. *Ellis v. Capital Life & Health Ins. Co.*, 229 S. C. 388, 93 S. E. (2d) 118. Contracts should be liberally construed so as to give them effect and carry out the intention of the parties. *Wise v. Picow*, 232 S. C. 237, 101 S. E. (2d) 651. In the case of *Charleston & W. C. Ry. Co. v. Joyce*, 231 S. C. 493, 99 S. E. (2d) 187, we quoted with approval from the

case of *Sanders v. General Motors Acceptance Corporation,* 180 S. C. 138, 185 S. E. 180, 182, the following:

" 'The words of a contract will be given a reasonable construction, where that is possible, rather than an unreasonable one, and the court will likewise endeavor to give a construction most equitable to the parties, and which will not give one of them an unfair or unreasonable advantage over the other. So that interpretation which evolves the more reasonable and probable contract should be adopted, and a construction leading to an absurd result should be avoided.' 13 C. J. § 511, p. 540."

And again from *Sanders v. General Motors Acceptance Corporation, supra:*

" ' "Instruments should receive a sensible and reasonable construction and not such a construction as will lead to absurd consequences or unjust results." *Fairbanks, Morse & Co. v. Twin City Supply Co.,* 170 N. C. 315, 86 S. E. 1051.' *Chatfield-Woods Co. v. Harley,* 124 S. C. 280, 117 S E. 539, 541.

"A principle of construction which is also well settled is, that where one construction would make a contract unusual and extraordinary and another construction, equally consistent with the language employed, would make it reasonable, fair, and just, the latter construction must prevail. *Stein v. Archibald,* 151 Cal. 220, 90 P. 536."

We have held that a conditional sales contract is in legal effect a chattel mortgage. *Speizman v. Guill,* 202 S. C. 498, 25 S. E. (2d) 731; and the primary object in construing a chattel mortgage is to ascertain the intention of the parties. *Clowney v. Rivers,* 129 S. C. 58, 123 S. E. 759.

The complaint in this action affirmatively alleges that the first instalment of the deferred balance was due on September 6, 1954, and it is admitted that this payment was not made. The conditional sales contract provides that if any instalment is not paid on the due date and it remains unpaid

for five days thereafter, interest shall accrue thereon at the highest lawful contract rate from such due date. There is nothing ambiguous about this portion of paragraph 3. It should be kept in mind that the deferred balance did not draw interest according to the terms of the conditional sales contract, but it was agreed by the parties that five days after default interest at the highest lawful contract rate would commence to run on the indebtedness and the interest charges are related back to the due date. It is further provided that thirty days after default a collection fee of not less than $1.00 nor more than $5.00 could be added to the amount due. This paragraph also provides that if the holder of the conditional sales contract places such in the hands of an attorney for collection, a charge of 15% of the amount due or such lesser sum as may be permitted by law is to be added as attorney fees. This entire paragraph clearly governs the amount to be paid to restore a defaulted contract to a current status should the holder of the conditional sales contract not exercise the election therein given and declare the entire indebtedness due and payable, and to take possession of the automobile for the satisfaction of the indebtedness.

Paragraph 4 of the conditional sales contract has reference to and governs the method by which the security provisions of the contract are to be enforced. It provides that "in the event purchaser defaults on any payment due on this contract" the seller or holder of the conditional sales contract shall have the right, at his election, to declare the unpaid balance immediately due and payable. Immediately following this provision, the contract states: "Further, upon such default or event," the seller may take immediate possession of said property without demand.

In 30 Am. Jur., Interest, para. 5, at page 9, we find the following:

"In the absence of statute, the obligation to pay conventional interest must rest upon an agrement, express or implied, to pay for the use of the money of another, and there

appears to be no doubt that persons who occupy or intend to assume the relation of debtor and creditor may contract for the payment of interest upon the indebtedness within the limits allowed by any prevailing statute. Where interest is expressly reserved in a contract it is recoverable as of right."

Likewise it has been held that if parties to contracts for the payment of money stipulate for its payment with interest after maturity, the interest is computed from maturity. *Wheeless v. Williams,* 62 Miss. 369, 52 Am. Rep. 190.

In the case of *Administrators of Satterwhite v. M'Kie,* 16 S. C. L., Harp., 397, it appears that one M'Kie gave a promissory note to the Administrators of the estate of John Satterwhite payable twelve months after date, but if not then paid, the note to carry interest from the date. M'Kie failed to pay the note when it became due. The Administrators commenced an action thereon and M'Kie confessed a judgment with interest from the date of the note. M'Kie thereafter moved the Court that the interest which had accrued between the date of the note, and the time when it became due, should be stricken from the judgment. This motion was granted. Upon appeal the Court reversed the Court below and said:

"The law by which a contract is to be governed, is resolved into the terms whereby it is entered into; provided that the contract be consistent with morality, and not repugnant to law or the principles of public policy. In this case, it was certainly competent for M'Kie, who had received a full and adequate consideration, to contract for the payment of interest upon the debt he owed, from any point of time after he had received the consideration for which he became a debtor. The case would not be varied by supposing that the note had been drawn with interest from the date, but the interest to be remitted on his paying the sum due on the day assigned for the payment. This is the obvious meaning and intent of the parties to the contract. The laches of M'Kie could alone render him responsible for interest, and, having incurred this responsibility by his default of payment, he

voluntarily confessed judgment, according to the tenor of his contract. This was doing no more than what the law and good faith required of him. The judgment, as entered upon the confession of the defendant, must stand, and the order made for striking out interest is reversed."

The trial Judge, in holding as a matter of law, that the respondent was not in default in payment under the conditional sales contract, said, "I would certainly feel under that contract I had thirty days grace, at least for payment. I believe a contract of that nature should be interpreted the same as an insurance policy." We should point out that it is generally true at the present time that life insurance policies have a grace period, usually thirty days, because of the contractual provision placed in the insurance contract, within which period the policy remains in force and the premium due may be paid. There is no comparable provision in the contract here under consideration.

It is our duty to construe the conditional sales contract to mean what on its face it purports to mean. We must give to the words used their plain, ordinary and literal meaning. The only reasonable construction of the provision contained in paragraph 3 of the conditional sales contract here involved is that when the respondent failed to pay the instalment due on September 6, 1954, he was in default, and if such default continued for five days thereafter he was liable to the appellant for interest at the highest lawful contract rate from such due date. We think the trial Judge was in error in holding to the contrary and charging the jury that the respondent was not in default at the time of the repossession of the automobile in question by the appellant, and in charging the jury that it could consider this circumstance in determining the existence of fraud on the part of the appellant and in fixing damages to be awarded. The trial Judge should have held that the respondent was in default and he should have charged the jury accordingly, as was requested by the appellant.

The other two questions may be disposed of together by answering the question whether the representations made by the appellant were actionable as fraud and caused legal damage to the respondent.

The respondent, in order to recover in an action for fraud and deceit, must allege and prove the elements thereof. In the case of *Flowers v. Price,* 190 S. C. 392, 3 S. E. (2d) 38, 39, these elements are stated to consist of:

"(1) A representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity; (5) his intent that it should be acted upon by the person; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; (9) and his consequent and proximate injury."

Likewise, the burden of proving all of the foregoing elements of fraud is on the plaintiff and his failure to prove any one of them is fatal to recovery. *Able v. Equitable Life Assur. Society,* 186 S. C. 381, 195 S. E. 652. The question for determination is whether the respondent's testimony, taken as true, affords a basis upon which a jury could properly find support for each of the elements of an action for fraud and deceit as above defined; and, if all of such elements are found from the testimony, it would still be necessary, to entitle the respondent to go to the jury to find that his evidence furnishes the measure of his loss which governs the amount of recovery in cases of this character.

The respondent testified that one Rosser, a representative of the appellant, came to his home on the morning of September 10, 1954, and that he talked to him "a minute or two." In part, the witness said: "I asked him how much was the payment on the car and interest. He told me, said, well, to come on to Tabor City and we'll get the papers straightened out and tell you how much it is. Told me save some— be for my benefit." He further testified that Rosser "told me he was a representative of some kind of motors. Agent for

some kind of motors. Then I asked him whereabouts. He told me over there in Tabor. Said over there. Said go with him to Tabor, would be for my convenience." The respondent testified that he offered to pay Rosser, at his home, the sum of $600.00 and interest, and he was asked this question: "What was his reason for not accepting the money? A. He didn't even know how much it was. He told me he didn't know how much it was. Told me to let's go to Tabor City and find out. Get the papers straightened out—be for my convenience." This witness also testified as follows:

"Q. Why did you ask him how much it was? A. I figured there would be interest.

Q. Why would there be interest? A. I knowed it was over due.

Q. That was the 6th of September payment due? A. Yes, sir."

The respondent also testified that when he got to Tabor City that he was advised by a representative of the appellant and Prince Motor Co., Inc., that he would have "to pay the whole thing up". He said he was told that he would have to pay it all before he would be permitted to move the car. We quote the testimony thereabout:

"Q. Did he ever tell you he would allow you to pay the whole thing up? A. Yes, sir, said all money this morning before I left.

Q. He didn't tell you at any time you can't pay it off? A. No, sir.

Q. Would have let you paid it off that morning, that right? A. The whole amount. Wouldn't take the payment."

The conditional sales contract provides that in the event the purchaser, the respondent herein, defaults on any payment due on this contract, that the holder of the contract would have the right, at its election, to declare the unpaid balance to be immediately due and payable. It is clear from the testimony of the respondent that the appellant exercised its right under the contract to accelerate the

payment of the entire indebtedness because of default, and respondent was accordingly advised the amount necessary to be paid in order to retain possession of his automobile. This Court has approved the exercise of the acceleration clause giving to the holder of a note the right to declare the entire principal due and payable because of a default in the payment of an instalment of either principal or interest. *Berry v. Caldwell,* 121 S. C. 418, 114 S. E. 405; *Farmers' Bank & Trust Co. v. Fudge,* 113 S. C. 25, 100 S. E. 628; and *Collins v. Collins Estate, Inc.,* 207 S. C. 452, 36 S. E. (2d) 584. There can be no question that the appellant exercised a legal right in declaring the entire debt of the respondent to it to be due and payable. Where one acts within his legal right, fraud will not be presumed or implied. *Tolbert v. Roark,* 126 S. C. 207, 119 S. E. 571, and *Waring v. South Carolina Power Company,* 177 S. C. 295, 181 S. E. 1.

We have heretofore held that the respondent had made default in his payment under the conditional sales contract, and that upon such default being made, the appellant had the option of exercising the acceleration clause in said contract. It is undisputed that he was told that it would be necessary for him to pay the entire balance due and that he would get a rebate on the carrying charges and insurance. Upon the failure of the respondent to pay the entire balance due, the appellant was entitled to repossess the automobile in question.

In *Willis v. Whittle,* 82 S. C. 500, 64 S. E. 410, this Court said:

"It is well settled that, after condition broken, the legal title to mortgaged chattels vests in the mortgagee. The right of the mortgagee to seize mortgaged chattels, after condition broken is a license coupled with an interest, which cannot be revoked by the mortgagor. It is a part of the consideration of the mortgage, and to allow the mortgagor to revoke it would be a fraud upon the rights of the mortgagee, and would very much impair the value of chattel mortgages as securities. The right to seize carries with it by necessary im-

plication, the right to do whatever is reasonably necessary to make the seizure, including the right to peaceably enter upon the premises of the mortgagor. There is one restriction, however, which the law imposes upon this right. It must be exercised without provoking a breach of the peace; and, if the mortgagee finds that he can not get possession without committing a breach of the peace, he must stay his hand, and resort to the law, for the preservation of the public peace is of more importance to society than the right of the owner of a chattel to get possession of it. *Satterwhite v. Kennedy,* 3 Strob. 457; *Harris v. Marco,* 16 S. C. 575, 578."

The holding in the last cited case has been reaffirmed in numerous cases. *Hutchinson v. A. K. Brown Motors, Inc.,* 191 S. C. 319, 4 S. E. (2d) 268; *Soulios v. Mills Novelty Co.,* 198 S. C. 355, 17 S. E. (2d) 869; *Justus v. Universal Credit Co.,* 189 S. C. 487, 1 S. E. (2d) 508; *Lyda v. Cooper,* 169 S. C. 451, 169 S. E. 236.

The testimony shows that the appellant repossessed the automobile of the respondent at the place of business of Prince Motor Co., Inc., at Taor City, North Carolina, by taking the keys therefrom while the respondent stood at a window in the place of business of Prince Motor Co. and observed such repossession. The repossession occurred without a breach of the peace or anything tending to provoke such. It is true, however, that the respondent testified that he demanded that the appellant surrender possession of the automobile to him.

The testimony shows that after appellant had repossessed the automobile in question and after due notice to the respondent by registered mail, the automobile was advertised and sold at public auction for the sum of $1,000.00. The respondent was present at the sale and made no effort whatsoever to protect his equity of redemption by either paying the debt he owed or attempting to purchase the automobile at the auction sale. The appellant followed the remedy prescribed by this Court in the case of *Speizman v. Guill,* 202 S. C. 498, 25 S. E. (2d) 731, by taking peaceable possession

of the automobile and advertising and selling the same at public auction, and applying the proceeds of the sale to its secured debt. Certainly, under these circumstances, there can be no doubt that in taking possession of the automobile, upon condition broken, the respondent was exercising a plain, well defined legal right. This Court held in *General Motors Acceptance Corporation v. Hanahan,* 146 S. C. 257, 143 S. E. 820, that an action in conversion would not lie because of the exercise of such legal right.

In *Coleman v. Stevens,* 124 S. C. 8, 117 S. E. 305, 307, this Court approved the following:

"Deceit or fraudulent representation, in order to be actionable, must relate to existing or past facts, and the fact that a promise made in the course of negotiations is never performed does not in and of itself constitute nor evidence fraud. A mere breach of a contract does not constitute fraud."

"A future promise is not fraudulent, unless such a future promise was part of a general design or plan existing at the time, made as part of a general scheme to induce the signing of a paper or to make one act, as he otherwise would not have acted, to his injury."

The respondent testified that the agent of the appellant did not know the amount due on the conditional sales contract and that if the respondent would accompany him to Tabor City the amount would be correctly computed. Under the testimony this was not a false representation because this very thing was done when the parties reached Tabor City. The respondent testified that upon arriving at Tabor City, the representatives of the automobile dealer and the appellant conferred and determined that they would have to exercise their right under the contract to accelerate the entire indebtedness because of default, and he was accordingly advised the amount necessary to be paid in order to retain the possession of his automobile. We think that the testimony in this case falls far short of showing any fraud and deceit.

The respondent agreed in the "statement" of the case that "in consequence of which plaintiff was· damaged to the ex-

tent of his equity in said automobile", and in his complaint alleges that his damages were occasioned because of "the fact that his automobile was seized by * * * the defendant". This alleged damage was not caused and occasioned by any fraud and deceit practiced by the appellant. The respondent lost his equity in the said automobile because of his failure to pay the instalment due under the conditional sales contract. This loss was not occasioned or proximately caused by any misrepresentations of the appellant.

It is our opinion that the representations made by the appellant were not actionable as fraud and caused no legal damage to the respondent. The motion of the appellant for a directed verdict in the lower Court should have been granted.

It is the judgment of this Court that the judgment of the lower Court be reversed and this case be remanded in order that judgment may be entered up in favor of the appellant.

STUKES, C. J., and TAYLOR, OXNER, LEGGE and MOSS, JJ., concur.