18015

Frank W. SOSSAMON, Sr., Respondent, v. S. C. LITTLEJOHN, Appellant

(129 S. E. (2d) 124)

*Messrs. J. Claude Fort* and *Jonathan Z. McKown,* of Gaffney, *for Appellant,*

*Messrs. T. Allen Legare, Jr.,* of Charleston, and *Wade S. Weatherford, Jr.,* of Gaffney, *for Respondent,*

January 14, 1963.

LEWIS, Justice.

This is an action by the plaintiff for the specific performance of an alleged contract betwen him and the defendant for the sale of the defendant's one-half interest in a partnership business owned by them. The plaintiff and the defendant had for many years operated successfully, as equal partners, at Gaffney, South Carolina, a newspaper, printing business, and stationery shop, under the name of The Gaffney Ledger, in a building owned by the partnership. In 1959 there was an exchange of letters betwen them relating to the sale by the defendant to the plaintiff of defendant's interest in the partnership assets, which plaintiff interpreted as a binding contract of sale. The defendant, on the other hand, denied that a binding contract for the sale of his interest in the partnership had been entered into and refused to sell. This action was then instituted by the plaintiff to require specific performance by the defendant of the alleged contract. The lower court held that an enforceable contract was entered into and decreed specific performance. From such judgment the defendant has appealed.

The complaint fully set forth the writings which it was claimed formed the contract of sale between the parties. Upon the service of the complaint, the defendant interposed a demurrer thereto upon the ground that the complaint failed to state facts sufficient to constitute a cause of action for specific performance since it appeared from the complaint that the corespondence did not constitute a definite offer of sale by the defendant and, if so, there was no unconditional acceptance thereof by the plaintiff. The demurrer, which was heard by the Honorable G. Duncan Bellinger, Presiding Judge, was overruled and an order passed, pursuant to Section 7-422 of the 1952 Code of Laws, directing that any appeal from the order overruling the demurrer would not operate as a stay of further proceedings for the determination of the issues on the merits. Appeal from the order overruling

the demurrer was accordingly suspended and the cause proceeded to a final determination on the merits before the Honorable James M. Brailsford, then Circuit Judge, now a member of this Court, resulting in a decree for specific performance of the contract of sale. The matter is here upon appeal by the defendant from the order of Judge Bellinger overruling the demurrer to the complaint, and from the adverse decree of Judge Brailsford on the merits.

The order overruling the demurrer held in effect that the correspondence between the parties, as alleged in the complaint, constituted a definite offer of sale and an unqualified acceptance, and that proof of such correspondence would be *prima facie* proof of a valid contract. In the consideration of the merits, both, the special referee to whom the issues were referred and Judge Brailsford, considered the foregoing rulings on the demurrer as binding on them. The decree for specific performance was, accordingly, bottomed upon the prior holding of Judge Bellinger that the correspondence between the parties constituted a binding, enforceable contract. Therefore, since, under our view of the matter, the order overruling the demurrer was in error in holding that the correspondence between the parties constituted a binding contract, it will be unnecessary to consider the questions arising under the appeal from the order of Judge Brailsford on the merits. We confine ourselves, therefore, to a consideration of the basic question of whether the correspondence between the parties constituted a binding contract for the sale of one-half interest of the defendant in the partnership assets.

The alleged contract between the parties is contained in a letter of the defendant to the plaintiff under date of March 19, 1959, and a letter, with an attached proposed agreement, of the plaintiff to the defendant in reply dated March 20, 1959.

The letter of March 19, 1959 of the defendant to the plaintiff was as follows:

"In accordance with our conversation this afternoon, I herewith submit to you this offer:

"I will sell you my one-half interest in the business of The Gaffney Ledger and the building owned jointly by us at the corner at Limestone and Birnie Streets for the sum of One Hundred ($100,000.00) Thousand Dollars. This does not include the cash on hand at the time of sale, which is to be divided equally between us, and I am to receive the $5,-000.00 life insurance policy which the business has been carrying on me with the Pilot Life Insurance Company."

On the following day, March 20, 1959, the plaintiff delivered to the defendant the following letter in reply to the foregoing offer:

"This is to acknowledge receipt of your offer of sale of March 19, 1959, for the Ledger Building and all business interests jointly owned and operated by us as a partnership.

"Your offer of sale as outlined in your letter is hereby accepted and a part payment of $1,000.00 is herewith made for application upon the sale price.

"The details of the transfer must necessarily be worked out satisfactorily to you and to me. I have attached hereto a proposed written agreement which sets more fully in detail the sales contract which we have consummated, and provides for the termination of our partnership. I would like to get this agreement signed today so that I may begin making necessary arrangements to pay the purchase price."

To the letter of the plaintiff there was attached a check in the amount of $1,000.00 as part payment of the purchase price and a proposed agreement, which embodied various matters relating to the terms of the sale. Pertinent to our inquiry here are paragraphs 2, 3, 4 and 5 of the proposed written agreement, which are as follows:

"2. The total purchase price shall be the sum of One Hundred Thousand and No/100 ($100,000.00) Dollars of which One Thousand and No/100 ($1,000.00) Dollars is paid herewith, leaving a balance due and owing of Ninety-nine Thousand and No/100 ($99,000.00) Dollars, plus one-half of the actual cash on hand in the bank as of April 1, 1959,

in which the parties have a joint interest as of April 1, 1959. As part of the sale it is also agreed that the life insurance policy carried presently by the business on S. C. Littlejohn with the Pilot Life Insurance Company shall be transferred to S. C. Littlejohn individually and he shall have the sole right to change and designate the beneficiary thereon.

"3. The said S. C. Littlejohn shall on or before April 1, 1959, designate the manner in which the balance of the purchase price of Ninety-nine Thousand and No/100 ($99,-000.00) Dollars shall be paid to him and the said F. W. Sossamon, Sr. shall have a period of thirty days thereafter in which to arrange payments or to secure the balance in a manner satisfactory to S. C. Littlejohn, provided that if the said S C. Littlejohn shall designate that the said sum is to be paid in cash, then the said F. W. Sossamon, Sr. may have an additional thirty days in which to arrange for said cash payment if such be necessary.

"4. The partnership of F. W. Sossamon, Sr. and S. C. Littlejohn shall terminate and end on April 1, 1959 which date shall be the effective date of this sale. Upon the payment of the purchase price on said date or thereafter within the time herein provided or the securing of the said purchase price in a manner satisfactory to the said S. C. Littlejohn, the said S. C. Littlejohn then agrees to execute and deliver to F. W. Sossamon, Sr. fee simple general warranty deeds, with dower renounced to the real estate, unincumbered and taxes prorated to the time of sale, and also such other bill of sales as may be proper to convey his interest in the business and all the personal property and assets to be transferred.

"5. It is agreed that the sale and transfer herein shall include all accounts receivable on April 1, 1959 and the said F. W. Sossamon, Sr. shall assume and be responsible for all accounts payable from and after said date. Other than accounts payable in connection with the business, the interest of the said S. C. Littlejohn in all of the property, real and personal, shall be free of indebtedness, mortgages or any in-

cumbrances whatsoever when transferred to F. W. Sossamon, Sr."

The foregoing letter of the plaintiff, with the proposed agreement attached, was delivered to the defendant on March 20, 1959 and on the same day the defendant wrote the following letter to the plaintiff in reply:

"Your counteroffer of March 20, 1959, embodied in your proposal handed to me today does not comply with our original agreement for the sale of the business enterprise and newspaper property for one hundred thousand dollars, and is hereby rejected.

"My offer to sell the business did not include two months free benefits of the business, and did not include transfer of the title prior to the payment of $100,000.00 as called for by your counteroffer.

"Since $100.000.00 in legal tender has not been paid or offered for the sale proposed in my original agreement, and since your counteroffer is not acceptable to me, I am herewith immediately withdrawing any and all offers that may have been previously made by me."

On the following day, March 21, 1959, the plaintiff wrote a letter to the defendant in reply in which he stated that he considered that a binding contract of sale had been entered into between them and that he was ready to pay the consideration in cash upon delivery to him of the deed and bill of sale to the property.

There can be no doubt that the letter of the defendant of March 19th constituted an offer to sell his interest in the partnership assets. We do not think, however, that the foregoing letter of the plaintiff of March 20, 1959, with the attached proposed agreement, constituted an unconditional acceptance of the offer of sale as contained in defendant's letter to plaintiff; but rather contained a counter proposal as to a material part of the contract.

The letter of the defendant offered to sell his one-half interest in the partnership assets for the sum of $100,000.00,

plus one-half of the cash on hand at the time of sale and the transfer of a policy of life insurance to him. The terms of payment were not specified, nor was the time of taking possession of the property stated.

Where a contract for the sale of property is silent as to the time of payment, it is presumed that payment is to be made simultaneously with the delivery of the property involved. 12 Am. Jur. 859, § 304. The offer of defendant implied a cash transaction, *Cohn v. Penn. Beverage Co. et al.,* 313 Pa. 349, 169 A. 768; and there is nothing in the record to indicate other than that payment of cash at the time of the delivery of the property was intended by such offer.

The letter of the plaintiff in reply to the offer of the defendant stated that "your offer of sale as outlined in your letter is hereby accepted." Such acceptance would mean, in the light of the offer, that plaintiff accepted the proposition of the defendant which included payment of cash at the time of delivery of the property. The acceptance of the plaintiff did not, however, stop there. This acceptance was qualified by the further portions of the letter and the proposed agreement attached thereto. The foregoing acceptance was qualified by the proposal that the sale be effective as of April 1, 1959 and that the payment of the price agreed upon be made, in effect, within sixty days thereafter, at which time a deed and bill of sale would be executed. The effect of the proposed agreement submitted by plaintiff with his acceptance was to end the partnership and defendant's connection with the business on April 1, 1959 and deliver possession of the assets to the plaintiff on that date, with the right on the part of the plaintiff to pay cash within sixty days thereafter, if cash were demanded by the defendant. This clearly constituted a counter proposal to the offer made by the defendant.

As stated in *Cohn v. Penn. Beverage Co. et al., supra,* 313 Pa. 349, 169 A. 768: " 'Nothing is better settled than that in

order to constitute a contract there must be an offer on one side and an unconditional acceptance on the other. So long as any condition is not acceded to by both parties to the contract, the dealings are mere negotiations and may be terminated at any time by either party while they are pending. There must be a meeting of minds in order to constitute a contract. * * * "To constitute a contract the acceptance of the offer must be absolute and identical with the terms of the offer. If one offers another to do a definite thing, and that other person accepts conditionally or introduces a new term into the acceptance, his answer is either a mere expression of willingness to treat or it is in effect a counter proposal." "* * * A qualified acceptance does not constitute a contract." ' "

The rule is similarly stated in 12 Am. Jur. 544, § 53, as follows: "The acceptance must be unequivocal and unconditional. If a condition is affixed to the acceptance by the party to whom the offer is made or any modification of, or change in, the offer is made or requested, there is a rejection of the offer, which puts an end to the negotiations, unless the party who made the original offer renews it or assents to the modification suggested."

See also: 17 C. J. S., Contracts, § 43; Restatement of the Law of Contracts, Vol. 1, § 60.

The time and manner of payment of the purchase price with reference to the time of delivery of possession of the assets of the partnership was a material part of the transaction in this case and, when the plaintiff proposed in his alleged acceptance conditions other than cash upon delivery of the property and business, he imposed new or other conditions not contemplated in the offer. Such constituted a counter proposal as to a material term of the sale, to which the defendant was required to assent before there could be a meeting of the minds of the parties.

The fundamental basis of a suit for specific performance is that there be a contract between the parties. Since there

was no binding contract between the plaintiff and the defendant, there can be no right of the plaintiff to a decree for specific performance.

The answer of the defendant contained a counterclaim in which, among other things, a dissolution of the partnership was sought, together with a sale of all of the partnership assets. The questions which arise under the counterclaim are not properly before us and the cause must be remanded to the lower court for determination of such issues.

The judgment of the lower court is accordingly reversed and the cause remanded for further proceedings under the counterclaim.

Reversed and remanded.

TAYLOR, C. J., Moss, J., and LIONEL K. LEGGE and JOHN GRIMBALL, Acting Justices, concur.