484 S.E.2d 468

COLUMBIA HYUNDAI, INC., Appellant,

v.

CARLL HYUNDAI, INC., Alex T. Carll, Frank G. Carll,
Alice M. Carll, and Brenda Carll, Respondents.

No. 24601.

Supreme Court of South Carolina.

Heard Feb. 5, 1997.

Decided April 14, 1997.

Michael S. Church of Turner, Padget, Graham & Laney,
Columbia, for appellant.

Frank S. Potts of Lide, Montgomery, Potts & Medlock, Columbia, for respondent.

WALLER, Justice:

This is a contract case. The sole issue on appeal is whether the trial judge properly submitted the issue of the existence of a contract to the jury. We find that he did and, accordingly, affirm.

## FACTS

In early 1993, appellant, Columbia Hyundai, Inc. (Gibbes),[1] negotiated with respondent, Carll Hyundai (Carll) to purchase Carll's Hyundai automobile dealership. After several months of negotiations between the parties and their attorneys, and numerous revisions to drafts of a proposed contract, Carll submitted an "Agreement for Purchase and Sale of Assets" to Gibbes on July 20, 1993. The contract contained a provision to the effect that "This Agreement may not be amended, changed or modified except by instrument in writing signed by the parties to be charged." Paragraph 1(a) of the agreement, concerning the assets to be transferred, reads "All of Seller's right title and interest in and to all saleable **new Hyundai vehicles** in existence at the close of business on the last business day before final closing date. . . ." Gibbes signed the agreement but added the words "current year" such that the agreement now reads "all saleable **current year new Hyundai vehicles.**" Upon receipt of the agreement from Gibbes one week later, Carll advised the "counter-offer" was rejected.[2]

---

1. George Gibbes was president and sole shareholder of Columbia Hyundai. They are referred to collectively herein as Gibbes.

2. The dispute of the parties centers on whether this insertion merely relieved Gibbes of the obligation to purchase any 1992 new vehicles or, as Carll testified, whether insertion of the term "current year" could be interpreted to render Gibbes liable for only 1993 or 1994 new vehicles, but not both. The alteration was critical to Carll as it planned to finance $600,000.00 in new vehicles for Gibbes until such time as Gibbes was approved as a Hyundai dealer. If Gibbes was not obligated to purchase the 1994 vehicles, Carll could be forced to sell them for a reduced price, as it would no longer be an "authorized Hyundai dealer."

Gibbes instituted this suit for breach of contract and specific performance. The trial judge submitted the issue to the jury which found there was no contract. Gibbes appeals.

## ISSUE

Did the court err in failing to direct a verdict for Gibbes on the ground that, under section 36-2-207 of the South Carolina Uniform Commercial Code, a contract was formed as a matter of law? [3]

## DISCUSSION

Gibbes contends a contract was formed as a matter of law under S.C.Code Ann. § 36-2-207 (1976) (hereinafter § 2-207), such that it was entitled to a directed verdict. Under the facts of this case, we find the trial judge properly submitted the issue of the existence of a contract to the jury.

At common law, a purported acceptance containing terms which did not "mirror" those of the offer operated as a rejection thereof and amounted to a counteroffer. *Sossamon v. Littlejohn*, 241 S.C. 478, 129 S.E.2d 124 (1963). S.C.Code Ann. § 36-2-207 was designed to abrogate the rather severe consequences of the "mirror image" rule.[4] *Mace Industries,*

---

3. Carll contends section 2-207 is inapplicable as the sale of a business does not involve "goods." This contention was not specifically raised to the trial judge and is therefore not preserved. *Cook v. S.C.D.H.P.T.,* 309 S.C. 179, 420 S.E.2d 847 (1992) (issue must be raised to and ruled on by trial court to be preserved for appeal). In any event, although there is a split of authority, the majority view is that the sale of a business is treated as the sale of "goods" under the UCC. *See Annotation,* 4 A.L.R.4th 912; White and Summers, *Uniform Commercial Code* § 1-2 at p. 5 (4th Ed.1995).

4. Notwithstanding the beneficient intentions surrounding adoption of section 2-207, it has been the subject of much criticism and has been recognized by numerous commentators as "chaotic." *See, e.g.,* Murray, *The Chaos of the "Battle of the Forms": Solutions,* 39 Vand.L.R. 1307 (1986); Brown, *Restoring Peace in The Battle of The Forms: A Framework for Making Section 2-207 Work,* 69 N.C. L.Rev. 893, 899-900 at n. 23; Deusenberg & King, *Sales and Bulk Transfers; 3 Bender's UCC Service,* § 3.02 (1986); White and Summers, *Uniform Commercial Code* § 1-3 at p. 6 (4th Ed.1995); Thatcher, *Battle of the Forms: Solution by Revision of Section 2-207,* 16 U.C.C. L.J. 237 (1984).

*Inc. v. Paddock Pool Equip. Co., Inc.,* 288 S.C. 65, 339 S.E.2d 527 (1986). It provides, in pertinent part:

(1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

(2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:

(a) the offer expressly limits acceptance to the terms of the offer;

(b) they materially alter it; or

(c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

Adoption of § 2–207 resulted from what is commonly known as "the battle of the forms" in which parties exchange pre-printed, standardized forms to finalize their bargain, which forms tend to use "boilerplate language" and omit material terms. *Weisz Graphics Division v. Peck Industries, Inc.,* 304 S.C. 101, 403 S.E.2d 146 (1991). *See also* Official Comment 1 to § 36–2–207 (typical situation covered by section 2–207 involves memoranda or acknowledgement confirming oral agreement or letter intended as confirmation of agreement which adds further minor suggestions or proposals); Brown, *Restoring Peace in The Battle of The Forms: A Framework for Making Section 2–207 Work,* 69 N.C.L.Rev. 893, 899–900 at n. 23 (hereinafter Brown); White and Summers, *Uniform Commercial Code* § 1–3 at p. 6 (4th Ed.1995) (hereinafter White and Summers); *Owens–Corning Fiberglas v. Sonic Dev. Corp.,* 546 F.Supp. 533, 538 (D.C.Kan.1982) (when each party uses their own form, it is to be expected that acceptance will not correspond to terms of offer in all respects); *C. Itoh & Co. Inc. v. Jordan Intern. Co.,* 552 F.2d 1228 (7th Cir.1977) (in battle of forms, each party typically has printed form drafted by his attorney, containing as many terms favorable to him/her as may be envisioned).

However, there are some situations which simply do not warrant application of § 2-207. It has been noted by Professors White and Summers that in the case of non-form agreements, there is no pattern of exchange of printed forms. Under such circumstances, when the parties fully negotiate each provision of a contract, a contract may be "beyond the reach of 2-207 and adrift on the murky sea of common law." White and Summers, § 1-3 at p. 29. *See also* Brown, *supra* at p. 943 (concluding section 2-207 is inapplicable if no form is used or if the disputed term was the subject of precontract negotiation). We find the present case presents such a situation. The parties met and negotiated the provisions of their contract, through their attorneys, for several months. They exchanged at least four draft proposals, making numerous changes. The contract specifically contained a negotiated provision to the effect that it could not be amended or changed except by instrument in writing signed by the parties.

Under the limited factual circumstances presented here, we find this is simply not a "battle of the forms" case; on the contrary, this was merely one more in a series of contract negotiations. Accordingly, we find section 2-207 inapplicable to the present facts. Therefore, we find the matter of the existence of a contract was properly submitted to the jury.[5] *Player v. Chandler*, 299 S.C. 101, 382 S.E.2d 891 (1989) (South Carolina common law requires that, in order to have a valid and enforceable contract, there must be a meeting of the minds between the parties with regard to all essential and material terms of the agreement).

The judgment below is

**AFFIRMED.**

FINNEY, C.J., and TOAL, MOORE and BURNETT, JJ., concur.

---

5. The trial court charged the jury concerning the common law of contract formation and meeting of the minds.