**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
In The Court of Appeals

Jennifer Pringle and Dewayne Pringle, Plaintiffs,

Of whom Jennifer Pringle is the Appellant,

v.

Mackenzie Alice Hunt and Thomas Christopher Newman, Respondents.

Appellate Case No. 2024-000677

———————

Appeal From Dorchester County
Heath P. Taylor, Circuit Court Judge

———————

Unpublished Opinion No. 2026-UP-103
Heard December 8, 2025 – Filed March 4, 2026
Withdrawn, Substituted, and Refiled April 22, 2026

———————

**REVERSED**

———————

Robert Brian Critzer, of Greenville, and Kaye Gorenflo Hearn, of Conway, both of Wyche, PA; and Jonathan Michael Riddle, of Jeffcoat Law Firm, LLC, of Columbia, all for Appellant.

Megan Elyse Corrie, of Clawson & Staubes, LLC, of Charleston, for Respondents.

———————

**PER CURIAM:** Jennnifer Pringle (Jennifer) appeals the circuit court's order granting Mckenzie Alice Hunt and Thomas Christopher Newman's (collectively, Respondents) motion to enforce settlement as well as its order denying her motion to alter or amend. We reverse.

## FACTS/PROCEDURAL HISTORY

In September 2022, Dewayne Pringle (Dewayne) and Jennifer Pringle (Jennifer) were involved in a car accident with Respondent Hunt. Both Dewayne and Jennifer sustained injuries in the crash.

The Pringles sent Respondents' insurer, State Farm Insurance (State Farm), an Offer of Compromise (the Offer) to settle both Dewayne and Jennifer's claims. State Farm responded via letter through its attorney and indicated it would accept the demand "as to Jennifer Pringle only," and it attached a Covenant Not to Execute (the Covenant) to be signed by Jennifer. With this letter, State Farm included a check for Jennifer's claim. Jennifer did not sign the Covenant.

The Pringles subsequently filed suit in the circuit court, raising causes of action against both Respondent Hunt, as the driver, and Respondent Newman, as the owner of the car Hunt was driving. Respondents denied the claims.

Respondents then filed a motion to enforce settlement as to Jennifer. They argued the parties entered a valid contract when State Farm accepted the Offer as to Jennifer's claim. Following a hearing on the motion, the circuit court granted Respondents' motion to enforce settlement. Jennifer filed a motion to alter or amend pursuant to Rule 59(e), South Carolina Rules of Civil Procedure, which the circuit court denied. This appeal followed.

## STANDARD OF REVIEW

"In South Carolina jurisprudence, settlement agreements are viewed as contracts." *Byrd v. Livingston*, 398 S.C. 237, 241, 727 S.E.2d 620, 621 (Ct. App. 2012) (quoting *Pee Dee Stores, Inc. v. Doyle*, 381 S.C. 234, 241, 672 S.E.2d 799, 802 (Ct. App. 2009)). "An action to construe a contract is an action at law." *Id.* at 241, 727 S.E.2d at 622. "In an action at law, on appeal of a case tried without a jury, the judge's findings will not be disturbed unless they are without evidentiary support." *Id.* "However, this court is free to decide questions of law with no particular deference to the trial court." *Id.*

**LAW/ANALYSIS**

Jennifer argues the circuit court erred in enforcing a settlement when State Farm did not accept the Offer but instead counteroffered. She asserts the Offer was a single offer to settle both her and Dewayne's claims together and State Farm's letter purporting to accept the Offer changed a material term by "accepting" a settlement for only Jennifer's claim. We agree.

"The necessary elements of a contract are an offer, acceptance, and valuable consideration." *Sauner v. Pub. Serv. Auth. of S.C.*, 354 S.C. 397, 406, 581 S.E.2d 161, 166 (2003). "South Carolina common law requires that, in order to have a valid and enforceable contract, there must be a meeting of the minds between the parties with regard to *all* essential and material terms of the agreement." *Player v. Chandler*, 299 S.C. 101, 105, 382 S.E.2d 891, 893 (1989).

> Nothing is better settled than that in order to constitute a contract there must be an offer on one side and an unconditional acceptance on the other. So long as any condition is not acceded to by both parties to the contract, the dealings are mere negotiations . . . . To constitute a contract the acceptance of the offer must be absolute and identical with the terms of the offer. If one offers another to do a definite thing, and that other person accepts conditionally or [introduces] a new term into the acceptance, his answer is either a mere expression of willingness to treat or it is in effect a counter proposal.

*Sossamon v. Littlejohn*, 241 S.C. 478, 485–86, 129 S.E.2d 124, 127 (1963) (quoting *Cohn v. Penn. Beverage Co.*, 169 A. 768, 769 (Pa. 1934)).

"In construing a contract, the primary objective is to ascertain and give effect to the intention of the parties." *Ecclesiastes Prod. Ministries v. Outparcel Assocs., LLC*, 374 S.C. 483, 497, 649 S.E.2d 494, 501 (Ct. App. 2007) (quoting *Southern Atl. Fin. Servs., Inc. v. Middleton*, 349 S.C. 77, 80–81, 562 S.E.2d 482, 484–85 (Ct. App. 2002)). "Contracts should be liberally construed so as to give them effect and carry out the intention of the parties." *Id.* (quoting *Mishoe v. Gen. Motors Acceptance Corp.*, 234 S.C. 182, 188, 107 S.E.2d 43, 47 (1958)). "The parties' intention must, in the first instance, be derived from the language of the contract." *Id.* "[I]f the language is perfectly plain and capable of legal construction, it alone determines the document's force and effect." *Id.* "The parties' intention must be

gathered from the contents of the entire agreement and not from any particular clause thereof." *Id.* at 498, 649 S.E.2d at 502.

We hold State Farm's letter purporting to accept only Jennifer's claim constituted a counteroffer, and because Jennifer refused to accept State Farm's counteroffer by not signing the Covenant, a contract was not created. *See Sauner*, 354 S.C. at 406, 581 S.E.2d at 166 ("The necessary elements of a contract are an offer, acceptance, and valuable consideration."). It is clear from the language that the Pringles intended the Offer to settle both Dewayne and Jennifer's claims together. *See Ecclesiastes Prod. Ministries*, 374 S.C. at 497, 649 S.E.2d at 501 ("In construing a contract, the primary objective is to ascertain and give effect to the intention of the parties." (quoting *Southern Atl. Fin. Servs., Inc.*, 349 S.C. at 80–81, 562 S.E.2d at 484–85)); *id.* ("[I]f the language is perfectly plain and capable of legal construction, it alone determines the document's force and effect."). Specifically, the Offer began with the heading, "Offer of Compromise" and stated it regarded "our clients' claims." Although the Offer initially separated Dewayne and Jennifer under different headings, it is apparent that the purpose in so doing was to discuss each of their individual damages, injuries, and medical bills, rather than to indicate separate "offers." Further, in the summary of damages, the Offer referred to "[p]ayment from all applicable policies." Although the Offer referred to Jennifer and Dewayne's "claims," it stated "their medical bills are collectively over $200,000." Most important to our analysis is the final section of the Offer titled, "Offer Pursuant to *Tyger River* . . . ." In this section, the Offer required "unequivocal" acceptance "without variance," and included a demand for "payment of policy limits." The Offer further stated "[w]e must **RECEIVE** the policy limits" by a date certain. In one footnote, although Jennifer and Dewayne's claims were separated by bullet points, we find it is still clear these claims were meant to be settled together as indicated by the preceding requirement that State Farm "pay the settlement funds by Cashier's Checks or Certified Bank Checks" by a date certain. The language warned that "only performance will accept this Offer" and that it must have been accepted "exactly as stated." The Offer then discussed the singular covenant to be signed by Respondents that would be limited to protect Respondents from the "clients' rights to [Respondents'] personal assets." Finally, we find the language at the end of the Offer stating the "letter is our clients' formal Offer" and requiring acceptance of the Offer "in order for [the law] firm and [their] clients to agree that a binding agreement" was formed further indicates the parties' intention that the Offer function as a singular offer to resolve both claims.

In light of our holding that the Offer constituted a single offer to resolve both Dewayne and Jennifer's claims, we hold State Farm's "acceptance" functioned as a

counteroffer because it differed from the Offer, particularly as it relates to Dewayne's claim. *See Sossamon*, 241 S.C. at 486, 129 S.E.2d at 127 ("So long as any condition is not acceded to by both parties to the contract, the dealings are mere negotiations . . . ." (quoting *Cohn*, 169 A. at 769)); *Weisz Graphics Div. of Fred. B. Johnson Co., Inc. v. Peck Indus., Inc.*, 304 S.C. 101, 106, 403 S.E.2d 146, 149 (Ct. App. 1991) ("[A]n acceptance which adds different or additional terms is treated as a counteroffer, which may be accepted or rejected by the other party."). While Jennifer focuses her appeal on the fact that State Farm only accepted her claim and not Dewayne's, we find the telling language in State Farm's letter is its offer to "split" the remaining amount between Dewayne and the other claimant. Additionally, as discussed above, we find that the Offer was an offer to settle both Dewayne and Jennifer's claims together. Therefore, we hold the language in State Farm's letter created a counteroffer and indicated there was no meeting of the minds and no contract formed. *See Sossamon*, 241 S.C. at 485–86, 129 S.E.2d at 127 ("Nothing is better settled than that in order to constitute a contract there must be an offer on one side and an unconditional acceptance on the other. . . . To constitute a contract the acceptance of the offer must be absolute and identical with the terms of the offer." (quoting *Cohn*, 169 A. at 769)); *Player*, 299 S.C. at 105, 382 S.E.2d at 893 ("South Carolina common law requires that, in order to have a valid and enforceable contract, there must be a meeting of the minds between the parties with regard to *all* essential and material terms of the agreement.").

Based on the foregoing, the orders of the circuit court are

**REVERSED.**

**WILLIAMS, C.J., and THOMAS and CURTIS, JJ., concur.**