24117

CAROLINA CABLE NETWORK, a South Carolina General Partnership, Respondent v. ALERT CABLE TV, INC., and Cablevision Industries Corporation of whom Alert Cable TV is, Appellant.

(447 S.E. (2d) 199)

Supreme Court

*Frank R. Ellerbe, III,* of *Robinson, McFadden & Moore, P.C.,* Columbia, *for appellant.*

*Stephen P. Groves* and *Amy R. Jordan,* both of *Young, Clement, Rivers & Tisdale,* Charleston, *for respondent.*

Heard June 7, 1994.

Decided July 5, 1994.

TOAL, Justice:

In this appeal, we review a jury award for damages stemming from a  contract dispute between a cable advertising company and the cable system company it serviced with local cable advertising. We reverse.

## FACTS

On July 12, 1985, Carolina Cable Network (hereinafter CCN) entered into a contract with Alert Cable TV, Inc. (hereinafter Alert), to provide local cable advertising and local origination cable programming to Alert's Dorchester County cable television system. This contract allowed CCN to control and establish advertising rates between CCN and its advertising customers, and required CCN to remit payments to Alert at a rate of twelve cents ($.12) per cable subscriber per month. The initial term of the contract was for one year and CCN retained the right to renew at the expiration of a year.

From July 12, 1985 until July 12, 1991, CCN provided local advertising for insertion on the cable system and paid Alert the agreed-upon monthly fees. Sometime in December 1988, CableVision Industries Corporation (hereinafter CVI), purchased Alert and continued to operate under the original CCN contract until March 4, 1991. In March, Alert/CVI sent CCN a proposed new agreement which included a price increase to reflect the current market rate rather than the original twelve cents ($.12) per subscriber per month as contained in the original agreement. CCN rejected this proposal.

On June 12, 1991, CCN advised Alert that CCN would exercise its renewal option under the contract for the upcoming year. Thereafter on June 18, 1991, Alert/CVI advised CCN

that Alert intended to terminate the agreement effective July 12, 1991. Alert advised CCN that the reason for termination was the low rate per subscriber in the original contract which Alert found to be well below the current market rate.

After Alert's termination of the contract, CCN initiated this action against both Alert and its parent company, CVI, claiming beach of contract, unfair trade practices, and intentional interference with contractual relations. A jury trial was conducted from December 9 to December 11, 1992. At the conclusion of CCN's case, Alert and CVI moved for directed verdicts on each cause of action. These motions were granted except on the breach of contract claim, where Alert's motion for directed verdict was denied. The breach of contract claim against Alert was allowed to continue to the jury which returned a verdict in favor of CCN for forty thousand dollars ($40,000). It is from this jury award that Alert now appeals.

## ISSUES
The issues raised on appeal are:

1. Whether the disputed contract granted CCN the unilateral perpetual right of renewal, and, if not, whether Alerts' actions to terminate the contract were reasonable as a matter of law; and,

2. Whether the jury's award of forty thousand dollars ($40,000) was supported by the evidence contained in the record.

## LAW/ANALYSIS
Perpetual Right of Renewal

Alert asserts that as a matter of law, the contract cannot confer upon CCN a unilateral perpetual right of renewal. Alert argues that since there is by law no perpetual right of renewal, the contract was terminable at will, therefore, reasonable notice of termination was all that was required to relieve Alert from any contractual obligation.

Historically, perpetual contracts have not been favored in South Carolina and are generally upheld only where the perpetual nature of the agreement is an express term of the contract. *See Childs v. City of Columbia*, 87 S.C. 566, 70 S.E. 296 (1911). In *Childs*, the contract at issue was completely devoid of any term of duration and we were forced

to interpret the contract absent any evidence of the parties' intentions. *Id.* The parties all seem to concede that *Childs* is the governing law, and CCN acknowledges in their complaint that the contract term between CCN and Alert did not provide for a specific duration.

In *Childs,* we held that:

> [w]here the parties to a contract express no period for its duration, and no definite time can be implied from the nature of the contract or from the circumstances surrounding them, it would be unreasonable to impute to the parties an intention to make a contract binding themselves perpetually. In such a case the courts hold with practical unanimity that the only reasonable intention that can be imputed to the parties is that the contract may be terminated by either, on giving reasonable notice of his intention to the other.

*Id.* at 572, 70 S.E. at 298. Here, as in *Childs,* th fatal defect of the complaint is that it alleges a contract term lacking specific duration. The original 1985 contract provides in relevant part that:

> 9) [The] period covered by this agreement is one year with the right of renewal by Carolina Cable Network at its expiration.
> 10) Alert, Inc. reserves the right to cancel this agreement with fifteen days notice under the allowing conditions:
> a) Payment has not been made to Alert for use of its system within 60 days from the date of the original invoice.
> b) Carolina Cable Network through its operation misuses either the equipment or office space made available by Alert.

Alert argues that this seemingly perpetual right of renewal is sufficient to make the terms of the agreement ambiguous and, therefore, terminable at will. This assertion is correct. Plainly, the contract attempts to confer on CCN the indefinite right of renewal, and in light of the clear precedent of *Childs, supra,* this contract can only be construed as terminable at will. Where the contract is terminable at will, reasonable no-

tice from either party is all that is required to terminate the agreement. *Childs, supra.*

Reasonable Notice

Since either party can terminate this agreement upon ■ reasonable notice, the relevant question becomes:

Whether Alert's overall actions in terminating the agreement were as a matter of law reasonable.

The rules of construction governing contract in this case are analogous to those governing distributor contracts which have been the subject of extensive litigation in South Carolina. In distributor contracts, the overall reasonableness of terminating an agreement is often analyzed in the context of a wrongful termination action; however, the question of what business actions are reasonable should be consistent regardless of whether the action is at common-law contract or wrongful termination of a distributorship.

A summary of South Carolina law on the question of ■ reasonableness was recently provided by the Fourth

Circuit Court of Appeals in *Richland Wholesale Liquors v. Glenmore Distilleries,* 818 F. (2d) 312 (4th Cir. 1987). In *Richland,* the Fourth Circuit noted that:

> [C]ourts applying South Carolina law have found wrongful termination only in extraordinary circumstances. *Cf. Philadelphia Storage Battery Co. v. Mutual Tire Stores,* 161 S.C. 487, 159 S.E. 825 (1931) (distributor terminated at the height of the selling season without notice); *Gaines W. Harrison & Sons, Inc. v. J.I. Case Co.,* 180 F. Supp. 243 (E.D.S.C. 1960) (distributor terminated without notice in order for the supplier to avoid warranty obligations and destroy distributor's business, 90% of which was dependent on supplier's products); *deTreville v. Outboard Marine Corp.,* 439 F. (2d) 1099 (4th Cir. 1971) (termination of a distributor who had invested heavily in specialized equipment, parts and tools, without any buyback). *See also Bostick Oil Co. v. Michelin Tire Corp.,* 702 F. (2d) 1207 (4th Cir.), *cert. denied,* 464 U.S. 894, 104 S.Ct. 242, 78 L.Ed. (2d) 232 (1983) (jury entitled to determine whether distributor terminated in furtherance of anticompetitive purposes).

*Id.* at 315. The extraordinary circumstances which must be demonstrated are those which support a finding that the termination was done arbitrarily, maliciously or in bad faith. *Id.; see also Glaesner v. Beck-Arnley,* 790 F. (2d) 384 (4th Cir. 1986).

Alert's actions surrounding the termination of the contract are not in dispute. During 1990, CCN was trying to get out of the business and would later subcontract the work to another business. Concurrently, CCN had solicited a new contract from Alert for a potential buyer of the business. This new contract was never finalized and the subcontractor began to operate under a separate agreement with CCN which provided for a higher per-subscriber rate. CCN notified Alert of this new arrangement and informed Alert that it would continue to operate with Alert under the original 1985 contract.

Alert maintained correctly that CCN did not have the perpetual right to renewal and on March 4, 1991, notified CCN that the contract would be terminated unless CCN agreed to new terms. Negotiations ensued and on May 2, 1991, Alert extended the projected termination date to the anniversary date of th the original 1985 contract which was July 12. On July 5, 1991, Alert informed CCN that it had reached a tentative agreement with another company to do the local advertising, and gave CCN a final opportunity to agree on a new contract at the same terms as the potential replacement company. CCN rejected this offer stating that they had already renewed the contract at the old rate, and as a result, Alert terminated the agreement on July 12, 1991.

CCN did not offer any evidence at trial that the notice from Alert was insufficient, arbitrary, malicious or unreasonable. Employing the test applied in *Richland, supra,* we would then look for evidence that the termination of this contract was done arbitrarily, maliciously or in bad faith. the record here does not demonstrate any evidence of unreasonable behavior by Alert. In fact, it is quite clear that Alert was motivated by a legitimate business purpose. At the time of the original contract, the market subscriber rate was $.12, while six years later, the rate had increased to an approximate value of $.33 per subscriber per month. Obviously, the desire to terminate an agreement which cost Alert significant sums of lost rev-

enue was not an arbitrary or malicious decision.[1] The repeated attempts to renegotiate an agreement which would allow Alert to obtain the best price possible within regulatory and free market constraints is compelling evidence that Alert did not exercise bad faith.

In an action at law tried by a jury, our review extends to correction of errors of law, and a factual finding of the jury will not be disturbed unless the record discloses no evidence which reasonably supports the jury's findings. *Townes Associates, Ltd. v. City of Greenville,* 266 S.C. 81, 221 S.E. (2d) 773 (1976). On the present facts, it is quite evident that the lack of a specific durational term ran afoul of our decision in *Childs, supra,* thereby creating as a matter of law an at-will agreement which could be terminated upon reasonable notice. There is absolutely no evidence in the record to support the proposition that the notice given CCN was unreasonable; therefore, the verdict of the jury cannot stand.

Propriety of Damage Award

Alert argues that there was no evidence to support the jury's award of forty thousand dollars ($40,000) in damages. Because the contract was terminable at will and Alert gave reasonable notice, this issue is moot.

Accordingly, for the reasons stated, the trial court is REVERSED.

HARWELL, C.J., and CHANDLER, FINNEY and MOORE, JJ., concur.

---

[1]It is no coincidence that the factual predicate for terminating the agreement in *Childs, supra,* was a significant post-contract increase in market rates. These factual similarities lead additional support to the proposition that Alert's actions in terminating the present agreement were reasonable as a matter of law.