2292

Frank DOBYNS, Pat Basnett, Ann K. Hubbard and Rowena Hubbard, Richard E. Rettew, G.G. Dowling, Deborah O. McCarthy, Vern E. McCarthy, John E. Ownby, Jr., Gene Deloach, Francis F. DeLoach, N. William Pettys, Jr., Sara R. Steinmeyer, Lee Reed, Marjorie Reed, H.W. Wall, J.H. Walters, Jack C. Croft, Thomas A. Campbell, Jr., Blair Walker Hollis, June Walker Korn, Ellen D. Holstein, W.N. Barnes, Craig O. Diss, Rene M. Diss, Timothy F. Long, Valerie Long, Maya Hahn, Jan Shevin, Shirley M. Johnson, Jack J. Watts, Richard D. Ellenberg, Virginia Ingram, Donald R. Faulkner, C. Vaughn Leslie, Jr., Robert N. Brown, James A Leslie, Mary Alice O'Neal, William E. Pascoe, and Constance Curry, Plaintiffs, OF WHOM Frank Dobyns, Ann K. Hubbard and Rowena Hubbard, Richard E. Rettew, Deborah O. McCarthy, Vern E. McCarthy, John E. Ownby, Jr., Gene Deloach, Francis F. DeLoach, N. William Pettys, Jr., Sara R. Steinmeyer, H.W. Wall, J.H. Walters, Jack C. Croft, Thomas A. Campbell, Jr., Blair Walker Hollis, June Walker Korn, Ellen D. Holstein, W.N. Barnes, Craig O. Diss, Rene M. Diss, Jan Shevin, Shirley M. Johnson, Jack J. Watts, Richard D. Ellenberg, Virginia Ingram, Donald R. Faulkner, C. Vaughn Leslie, Jr., Robert N. Brown, James A Leslie, Mary Alice O'Neal, William E.

Pascoe, and Constance Curry are Appellant v. SOUTH CAROLINA DE-
PARTMENT OF PARKS, RECREATION AND TOURISM, Respon-
dent, and Craig O. DISS, Appellant v. SOUTH CAROLINA DEPART-
MENT OF PARKS, RECREATION AND TOURISM, Respondent.

(454 S.E. (2d) 347)

Court of Appeals

*Russell P. Patterson,* of *Jones, Scheider & Patterson,* Hilton Head Island, *for appellants.*

*W. Brantley Harvey, Jr.,* of *Harvey & Battey,* Beaufort, *for respondent.*

Heard Dec. 6, 1994.

Decided Jan 23, 1995.

HOWARD, JUDGE:

This is an appeal from a declaratory judgement action brought by Frank Dobyns and 39 other individuals (Tenants) who held 27 long-term leases on lots in Hunting Island State Park. The defendant in the action was the landlord, the South Carolina Department of Parks, Recreation and Tourism (PRT), which owns, manages and operates the Park. The Tenants asked the court to establish the rights, duties and liabilities of the parties with regard to their right to renew, transfer and assign their leases.[1] PRT counterclaimed seeking basically the same relief.[2] The case was referred with finality to the master-in-equity. The Tenants appeal from the resulting order. We affirm.

In 1939, Beaufort County deeded Hunting Island to the Forestry Commission, PRT's predecessor, pursuant to the authorization and direction of a Joint Resolution of the legislature. As part of the Joint Resolution, a Memorandum of Understanding was drafted to govern the proposed development of Hunting Island State Park and provided, in part:

> (8) The South Carolina State Commission of Forestry agrees that an [area] of land fronting on the beach of not less than fifty acres, the location and dimensions to be determined by the Commission of Forestry so as to provide as much beach front as may be compatible with the devel-

---

[1] The second action which is part if this consolidated appeal was filed by an individual leaseholder, Craig Diss, against PRT. The disposition of the Diss action similarly depended upon the construction of Diss' lease with regard to the right to renew, transfer and assign his lease. The Diss case was also referred with finality to the master-in-equity, who incorporated all the findings of fact and conclusions of law from the Dobyns action into the Diss order. Likewise, in this opinion Diss is included as a Tenant hereinafter.

[2] The Tenants sought other relief which is not the subject of this appeal. Additionally, PRT asserted defenses which need not be addressed in this appeal.

opment of its recreational areas be set aside and divided into lots, such to be available to the general public for leasing for a ten-year period for the construction of permanent cottages. . . . Nothing in this Section shall in any way interfere with the public use of the beach at all times.

The leases held by the Tenants contain the following language in the habendum clause:

TO HAVE AND TO HOLD, the same to the [Tenant], for the term of twenty years (unless sooner terminated as herein provided) commencing on the _____ day of _____ and ending the _____ day of

(Month)     (Year)

_____, with the option of renewing the

(Month)     (Year)

said lease for successive ten year periods, provided that written notice be given the Lessor by Lessee within sixty (60) days prior to the expiration of the period herein specified or of each successive renewal period; yielding and paying therefor at the rate of $_____ per annum, payable yearly in advance on the anniversary date here.

Thereafter the leases provide the following anti-assignment clause: "That the Lessee will not assign this lease or sub-let said premises or any part thereof without the previous consent in writing of the Lessor. . . ." In the past, PRT or its predecessor freely approved the transfer of the leasses, and many of the Tenants in this action obtained their leases from previous Lessees. Beginning in 1989, however, PRT has pursued a policy to withhold consent to any transfer of a lease. PRT wants to eventually eliminate all private leases on Hunting Island. The Tenants brought this action seeking a declaratory judgment as to their rights and obligations to renew, transfer and assign their leasehold interests.

The master found the leasehold interests were personal to each Tenant. As such, as long as the Tenant survived, the lease could be continuously renewed at the Tenant's election. However, at the Tenant's death, the lease could not be renewed by the Tenant's heirs, devisees, or assigns because the lease could not be transferred without the written consent of

PRT. Further, even during the Tenant's lifetime, the Tenant could not assign or otherwise transfer the lease without PRT's consent, and PRT could withhold consent without giving any reason. Ultimately, all the leasehold interests would be owned by PRT.

On appeal the Tenants assert the master erred in construing the leases as personal to the named Tenant, whereby the right to renew the lease terminates at the Tenant's death. The Tenants argue the master erred in construing the anti-assignment clause as applying upon the Tenant's death, and to transfers to family members and co-tenants. Further, they contend PRT cannot unreasonably withhold consent to a transfer. Finally, the Tenants argue PRT should be barred from denying transfer requests by estoppel and waiver. We affirm the master's order.

We agree with the master that the lease language is unambiguous, a ruling from which neither party appeals. *See Burton v. County of Abbeville*, — S.C. —, 440 S.E. (2d) 396 (Ct. App. 1994) (unchallenged ruling by the trial court is law of the case). Therefore, where the language used in a lease is plain, unmistakable, and unambiguous, the court will use the language of the contract, taken and understood in its plain, ordinary, and popular sense, to determine the contract's force and effect. *Warner v. Weader*, 280 S.C. 81, 311 S.E. (2d) 78 (1983); *Sphere Drake Ins. Co. v. Litchfield*, 313 S.C. 471, 438 S.E. (2d) 275 (Ct. App. 1993).

The Tenants assert the language in the habendum clause does not create a lease personal to the named Tenant. In support of this position, the Tenants argue South Carolina has long held that the death of a tenant holding a lease for a term of years does not terminate the tenancy. *Charles v. Byrd*, 29 S.C. 544, 8 S.E. 1 (1888). However, the master did not rule that the death of the Tenant terminates the tenancy. In fact, the master suggested the Tenant's heirs could enjoy the remainder of an existing term. Instead, the master held the Tenants right to renew the lease terminates at the Tenant's death. The right to renew the lease was not an issue in *Charles v. Byrd*.

Essentially, the Tenants assert their leases grant them the unqualified right to continuously renew the leases in perpetuity. Recently, our Supreme Court addressed perpetual leases in *Carolina Cable Network v. Alert Cable TV, Inc.*, 316 S.C.

98, 447 S.E. (2d) 199 (1994). In *Carolina Cable Network,* the court recognized perpetual leases are historically not favored in South Carolina, and such leases are generally upheld only where the perpetual nature of the agreement is an express term of the lease. *Id.* 447 S.E. (2d) at 201. The lease in *Carolina Cable Network* provided the lessee with a one-year term and the unqualified right to renew. The lease seemingly attempted to confer to the lessee a perpetual right of renewal. However, the court held the lack of a contract term providing a specific duration of the lease was a fatal defect. Accordingly, the court refused to recognize a perpetual right of renewal without evidence that the parties intended that result. The court stated, "[I]t would be unreasonable to impute to the parties an intention to make a contract binding themselves perpetually." *Id.* (quoting *Childs v. City of Columbia,* 87 S.C. 566, 572, 70 S.E. 296, 298 (1911)). Therefore, the contract was held terminable at will by either party upon reasonable notice. *Id.* at 101, 447 S.E. (2d) at 202.

■ The Tenants' leases in this case suffer from a similar fatal defect. Each lease provides for a ten-year term with a seemingly perpetual right to renew vested in the Tenant. The lease does not provide a specific duration or a specific number of renewals available to the Tenant. In accordance with *Carolina Cable Network,* we refuse to impute to these parties an intention to bind themselves to the lease in perpetuity absent such express term in the lease or evidence from the nature of the contract or surrounding circumstances that shows the parties' intention to allow a perpetual right to renew. Because this lease does not confer upon the Tenants the unilateral right to renew the lease in perpetuity, we hold the lease is terminable at will by either party upon reasonable notice, and upon such notice the lease will continue only for the existing term of years. *See Carolina Cable Network,* 316 S.C. 98, 447 S.E. (2d) 199 (1994).

■ Similarly, we find the anti-assignment clause to be unequivocal. The lease is not transferable absent written consent by the Lessor. The clause does not require that PRT act reasonably in withholding consent to a transfer, and we refuse to read such a requirement into the leases. The courts in South Carolina are without the authority to alter or rewrite a contract. *C.A.N. Enters., Inc. v. South Carolina*

*Health & Human Servs. Finance Comm'n,* 296 S.C. 373, 373 S.E. (2d) 584 (1988). The duty of a court is to enforce the contract as written, regardless of the wisdom or folly, apparent unreasonableness, or the parties' failure to guard their rights carefully. *Id.* By holding the parties to the express terms of the bargain, we follow the majority rule which places no restrictions on the Lessor's decision to withhold consent, even if arbitrary, absent language imposing a reasonableness standard. *See* 49 Am. Jur. (2d) *Landlord & Tenant* § 423 (1970); *see also Isbey v. Crews,* 55 N.C. App. 47, 284 S.E. (2d) 534 (1981) (refusing to insert a requirement that the landlord not unreasonably withhold consent to an assignment or sublease absent express language to the contrary).

Finally, the Tenants argue PRT should be estopped to deny transfers or be held to have waived its right to deny transfers. The master specifically held that "[PRT's] previous liberal consent to transfers does not impose upon [PRT] the duty to continue its policy." We agree. PRT was simply exercising its unqualified, unambiguous right under the lease to grant or deny a transfer request. A waiver involves the voluntary and intentional abandonment of a known right. *Janasik v. Fairway Oaks Villas Horizontal Property Re-gime,* 307 S.C. 339, 415 S.E. (2d) 384 (1992). There is no evidence PRT knowingly and intentionally waived its right to deny transfers or modified this explicit lease term.

Similarly, the Tenants have not established an estoppel claim because an essential element of such claim is that the party asserting estoppel lack the knowledge of the truth as to the facts in question. *Standard Fire Ins. Co. v. Marine Contracting & Towing Co.,* 301 S.C. 418, 392 S.E. (2d) 460 (1990); *Landing Dev. Corp. v. City of Myrtle Beach,* 285 S.C. 216, 329 S.E. (2d) 423 (1985). The record shows the anti-assignment clause unequivocally allowed PRT to deny transfers at its discretion and the Tenants were aware of this provision. Therefore, the estoppel claim fails.

For the foregoing reasons, the order of the lower court is

Affirmed.

HOWELL, C.J., and CONNOR, J., concur.