503 S.E.2d 184

**PRESTWICK GOLF CLUB, INC., Tullis Woodham, Richard C. Berry, C. Gordon Ramsey, and John Hussey, Appellants,**

v.

**PRESTWICK LIMITED PARTNERSHIP, Respondent.**

No. 2846.

Court of Appeals of South Carolina.

Heard April 7, 1998.

Decided May 18, 1998.

Rehearing Denied Aug. 20, 1998.

Dennis Hampton Smith, of Smith Law Firm, Surfside Beach, for appellants.

Wilburn Brewer, Jr., Paul A. Dominick, and Jonathan P. Weitz, all of Nexsen, Pruet, Jacobs, Pollard & Robinson, Charleston, for respondent.

HOWELL, Chief Judge:

This case involves a dispute over a tee-time schedule between members of the Prestwick Golf Club, Inc., (The Club) and the owners of the golf course, Prestwick Limited Partnership. The Club brought this action for breach of contract and some of the individual members of the Club alleged that the Partnership violated the South Carolina Unfair Trade Practices Act (UTPA). The trial court granted summary judgment in favor of the Partnership on both claims. The Club appeals. We reverse and remand.

## I.

The Partnership is the developer of the Prestwick subdivision. It owns and operates the golf course and country club facilities located within the subdivision. The Club is a private club controlled by the Partnership and was organized to govern the rights of the members in the country club.

In 1990 the Club became concerned with the availability of tee times at the golf course for members because of an increase in non-member play. The Club hired an attorney, who assisted them in negotiating an agreement with the Partnership. As a result of the negotiations, the Partnership adopted a tee-time schedule. The tee-time schedule designated certain times for members to play. Over time, as the number of Club members increased, the percentage of tee times reserved for members also increased. When the Club reached full membership of 550 people, all of the tee times would be exclusively reserved for members. In addition, the schedule also states, "This policy is flexible and shall be changed as circumstances require," and calls for representatives from the Partnership and the Club to meet quarterly to review the operation of the schedule.

On July 2, 1996, the Partnership sent a letter to the members of the Club outlining changes in the operations of the country club. The changes included an increase in tee times available for non-member play to 64% from 50% as provided in the 1990 schedule. The new tee-time schedule became effective July 15, 1996.

## II.

On the breach of contract claim, the trial court granted the Partnership's motion for summary judgment holding as a matter of law that the 1990 tee-time schedule was not a contract. In its order, the trial court specifically held the tee-time schedule did not constitute a contract because it was gratuitous, lacked essential terms and was too indefinite, was for an indefinite duration, and violated the statute of frauds. The Club challenges all of the trial court's reasons for ruling that the tee-time schedule was not a contract. We agree with the Club that the trial court should not have granted summary judgment.

Summary judgment is appropriate when it is clear there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), SCRCP. To determine whether an issue of fact exists, the court must view the evidence and all its inferences in a light most favorable to the nonmoving party. *Koester v. Carolina Rental Ctr. Inc.*, 313 S.C. 490, 443 S.E.2d 392 (1994). We therefore must view all the evidence in the light most favorable to the Club, and if the evidence supports the existence of a contract, the issue should be submitted to a jury. *See Columbia Hyundai v. Carll Hyundai, Inc.*, 326 S.C. 78, 484 S.E.2d 468 (1997) (holding matter of existence of a contract properly submitted to the jury).

### A.

 When viewed in the light most favorable to the Club, the tee-time schedule was not a gratuitous promise. If a promise is exchanged for valuable consideration, then it is not gratuitous. *See Shayne of Miami, Inc. v. Greybow, Inc.*, 232 S.C. 161, 101 S.E.2d 486 (1957); Restatement (Second) of Contracts § 75 (1981). Valuable consideration to support a contract may consist of some right, interest, profit or benefit accruing to one party or some forbearance, detriment, loss or responsibility given, suffered or undertaken by the other. *J.C. White Lumber Co. v. Allen*, 306 S.C. 183, 410 S.E.2d 588 (Ct.App.1991). A forbearance to exercise a legal right is valuable consideration. *Caine & Estes Ins. Agency, Inc. v. Watts*, 278 S.C. 207, 293 S.E.2d 859 (1982).

Tullis Woodham, a member of the Club, submitted an affidavit stating when he purchased his membership in the Club, he was led to believe that Prestwick was operated as a private country club. Thus, when the dispute over non-member play escalated, Woodham said the Club hired an attorney to protect the members' rights. The attorney negotiated with the Partnership and produced the 1990 tee-time schedule. Woodham stated, "[A]t the time the agreement was being negotiated, both sides considered [the tee-time schedule] to be a permanent solution to the nagging problem of outside play versus adequate financial support for the Country Club." Viewing this evidence in the light most favorable to the Club, we believe that there is enough evidence that a jury could

determine that the Club provided valuable consideration in exchange for the tee-time schedule by agreeing to not assert what the Club viewed as its legal right to insist that the Partnership run Prestwick as a private country club.

### B.

The trial court erred in finding as a matter of law the tee-time schedule was too indefinite and lacked essential terms. The trial court's holding that the tee-time schedule was void for indefiniteness stems from its finding that the schedule was merely an operating policy. The trial court concluded that the schedule was an operating policy because of the provision in the tee-time schedule stating that it was flexible and subject to change as circumstances require.

Looking at the contract in the light most favorable to the Club, we find the flexibility provision is ambiguous at best. When a provision is ambiguous, the intent of the parties controls. See *Holcombe v. Orkin Exterminating Co., Inc.*, 282 S.C. 104, 317 S.E.2d 458 (Ct.App.1984). Although the interpretation of a contract is generally a matter of law, the intent of the parties becomes a question of fact for the jury when the contract is ambiguous. *Kumpf v. United Tel. Co.*, 311 S.C. 533, 429 S.E.2d 869 (Ct.App.1993). A jury could reasonably find the parties intended the flexibility provision to be merely a statement of the obvious—in the future the parties could modify the schedule by mutual consent. Thus, the trial court should not have ruled as a matter of law that the tee-time schedule was too indefinite.

As for the trial court's ruling that the tee-time schedule lacked essential terms, we likewise disagree. In order for a contract to be binding, there must be a mutual manifestation of assent between the parties to the terms of the contract. *Edens v. Laurel Hill, Inc.*, 271 S.C. 360, 247 S.E.2d 434 (1978). The requirement of certainty in contracts ensures that the parties intend to conclude a binding agreement and provides the court a reasonably certain basis for granting a remedy. *King v. Oxford*, 282 S.C. 307, 318 S.E.2d 125 (Ct. App.1984). When the facts of this case are viewed in the light most favorable to the Club, a jury could determine that the parties intended to make a binding agreement. In addition,

the tee-time schedule specifically spelled out the rights of the parties in a manner that would permit a court to grant an appropriate remedy with reasonable certainty. We therefore believe a jury could find that the schedule contained the essential terms necessary for the formation of a contract.

## C.

The tee-time schedule did not violate the statute of frauds. S.C.Code Ann. § 32–3–10(4) (1991) states that "any contract or sale of lands, tenements or hereditaments or any interest in or concerning them" shall be in writing and signed. *Id.* At most, the tee-time schedule grants members the right to enter the land to play golf. The right to enter land is a license. *See Hilton Head Air Service, Inc. v. Beaufort County,* 308 S.C. 450, 418 S.E.2d 849 (Ct.App.1992). "A license does not vest in the licensee any estate or interest in the land." *Id.* at 457, 418 S.E.2d at 853. Thus, the tee-time schedule simply did not involve an interest in real property that would activate the statute of frauds.

## D.

The trial court also incorrectly relied on *Carolina Cable Network v. Alert Cable TV, Inc.,* 316 S.C. 98, 447 S.E.2d 199 (1994), to find the tee-time schedule was terminable at will by either party.

In *Carolina Cable,* the plaintiff sought redress for a contract which contained the following clause: "[The] period covered by this agreement is one year with the right of renewal by [the plaintiff] at its expiration." *Id.* at 102, 447 S.E.2d at 201. After analyzing this provision, the *Carolina Cable* court announced that a unilateral perpetual right of renewal in a contract is not valid. *Id.*

In this case, we are not dealing with a unilateral perpetual right of renewal. While the schedule contained a sliding scale for allotting tee times, with the Club receiving more tee times as its membership increased, the schedule did not expire and never needed renewing. In addition, when the evidence is viewed in the light most favorable to the Club, the schedule contained a specific duration. In a letter to the Club members about the implications of the tee-time schedule, the President

of the Board of Governors of Prestwick Golf Club wrote, "This policy places the membership on track for an eventual members and their guests only 'private' golf course." In addition, Richard Berry, a Club member, expressed in an affidavit "that once the membership of the club reached 550 memberships, the County Club would again return to fully private status, thus ending the need for the 1990 Agreement to exist." Just because the rights of the parties were keyed to membership levels rather than calendar time does not mean that the schedule should be considered an indefinite period. *See Jespersen v. Minnesota Mining & Mfg. Co.*, 288 Ill.App.3d 889, 224 Ill.Dec. 85, 88, 681 N.E.2d 67, 70 (holding that "a contract which . . . provides that it will terminate upon the occurrence of a specific event is not deemed perpetual in duration and is not terminable at will."), *appeal allowed*, 174 Ill.2d 564, 227 Ill.Dec. 6, 686 N.E.2d 1162 (1997). Thus, we believe that the trial court erred by ruling that the schedule was for an indefinite duration.

## III.

Specific members of the Club asserted claims under the UTPA based on the Partnership's abandonment of the tee-time schedule. The trial court granted the Partnership summary judgment on the UTPA claim finding that it was barred by the statute of limitations and that the Partnership's renunciation of the schedule could not constitute an unfair trade practice. The members of the Club contend the trial court erred on both of its findings. We agree.

The UTPA declares unlawful any "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." S.C.Code Ann. § 39-5-20(a) (1976). Furthermore, "Any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of an unfair or deceptive method, act or practice declared unlawful by § 39-5-20 may bring an action individually, but not in a representative capacity, to recover actual damages." S.C.Code Ann. § 39-5-140(a) (1976). A claimant must bring an action under the UTPA within three years of discovery of the unlawful conduct. S.C.Code Ann. § 39-5-150 (1976).

██ Individual members of the Club assert the Partnership engaged in unlawful conduct by using the 1990 tee-time schedule as an advertising and sales device to lure prospective purchasers into believing that the course was migrating toward an eventual status as a totally private club. The members only became aware of the Partnership's intention not to honor the schedule on July 15, 1996. The statute of limitations for the UTPA claim, thus, began to run on July 15, 1996, when the Partnership announced its intention to unilaterally revoke the agreement. Given that the complaint and second amended complaint were filed within three years of the notice of the claim, the statute of limitations does not bar the UTPA claim.[1]

██ The trial court also found the Partnership's renunciation of the 1990 tee-time schedule could not constitute an unfair trade practice because the schedule was not a binding contract between the parties.[2] As alluded to earlier, genuine issues of material fact exist as to whether the tee-time schedule is a binding contract. The schedule, however, does not have to be a binding contract for constitute a UTPA violation. If, as the Club alleges, the Partnership used the schedule to solicit business and then simply abrogated the terms of the schedule, a jury may determine these representations were prohibited by the UTPA because they were "unfair and deceptive acts". See S.C.Code Ann. § 39-5-20(a) (1976). We therefore conclude that the trial court erred in granting summary judgment on the UTPA claims at this time.

Accordingly, the order of the trial court granting the Partnership's motion for summary judgment on the breach of

---

**1.** Some members acquired their membership before the culmination of the 1990 tee-time schedule, and therefore would not have relied on the schedule at the time of purchase. We do not decide at this time what effect this would have on their ability to continue with the UTPA cause of action.

**2.** The trial court failed to view all facts and inferences in favor of the Club, the non-movant, when it decided that a 1991 HUD report "clearly stated in several places that [the Partnership] reserves the right to allow non-members to use the golf course." At best, the HUD report is ambiguous, thus requiring interpretation by a jury.

contract and UTPA claims is reversed, and the case remanded for further proceeding consistent with this opinion.

**REVERSED AND REMANDED.**

GOOLSBY and STILWELL, JJ., concur.