UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

C & W, INCORPORATED OF
BLACKSBURG,
   *Plaintiff-Appellant,*

v.

BELLSOUTH TELECOMMUNICATIONS,
INCORPORATED,
   *Defendant-Appellee.*

No. 00-1782

Appeal from the United States District Court
for the District of South Carolina, at Greenville.
Margaret B. Seymour, District Judge.
(CA-98-2462-6)

Argued: April 4, 2001

Decided: May 15, 2001

Before WIDENER and NIEMEYER, Circuit Judges, and
Lacy H. THORNBURG, United States District Judge for the
Western District of North Carolina, sitting by designation.

___

Affirmed by unpublished per curiam opinion.

___

## COUNSEL

**ARGUED:** Robert Wilkinson Hassold, Jr., NEXSEN, PRUET,
JACOBS & POLLARD, L.L.P., Greenville, South Carolina, for
Appellant. Thomas S. Tisdale, Jr., YOUNG, CLEMENT, RIVERS &
TISDALE, L.L.P., Charleston, South Carolina, for Appellee. **ON**

**BRIEF:** Stephen P. Groves, Sr., Stephen L. Brown, YOUNG, CLEMENT, RIVERS & TISDALE, L.L.P., Charleston, South Carolina, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

C & W, Inc. of Blacksburg ("C&W") commenced this diversity action against BellSouth Telecommunications, Inc. ("BellSouth") for a breach of contract under South Carolina law after BellSouth terminated its contractual relationship with C&W. The district court granted BellSouth's motion for summary judgment, and we affirm.

Following BellSouth's invitation to submit bids for placing buried service wire in the Greenville, South Carolina, area, BellSouth and C&W entered into a three-year master contract, beginning December 1, 1993. The contract, which only established rates and terms of performance that would become applicable for particular installations as called upon, provided that BellSouth "shall have the right to terminate this Contract upon ninety (90) days written notice to [C&W]." C&W's cancellation rights were more limited; it could only terminate the contract if BellSouth defaulted under any of its "material obligations" and C&W provided it with ninety (90) days written notice.

On November 28, 1995, BellSouth sent C&W a letter, providing C&W a notice of its intent to terminate the contract as of March 1, 1996, pursuant to its cancellation powers granted by the contract. The letter explained to C&W that BellSouth would thereafter be performing the work in-house. This was the result of BellSouth's collective bargaining agreement with the Communication Workers of America, negotiated in August 1995. During the course of the years that C&W had performed under the master contract, BellSouth was happy with

C&W's performance, and C&W profited handsomely, earning approximately $700,000 in profits per year.

C&W commenced this diversity action in August 1998, alleging that BellSouth, by canceling the contract prior to the expiration of its term without cause, breached the master contract. Despite the express provision in the contract authorizing the very conduct challenged by C&W, C&W argued that under South Carolina law, a party such as BellSouth who enjoys a unilateral cancellation privilege under a contract, may not exercise that privilege unless it is in a manner consistent with "equity and good conscience." C&W's theory was that BellSouth's decision to terminate the contract prior to the expiration of its term, despite C&W's outstanding performance, was inconsistent with "equity and good conscience." C&W also argued that BellSouth had represented that the contract would not be terminated as long as C&W's performance was adequate, that it reasonably relied on that representation, and that it suffered an injury as a result of BellSouth's breach of the representation. The district court rejected C&W's arguments as a matter of law and entered summary judgment for BellSouth.

At oral argument on appeal, C&W abandoned its promissory estoppel argument, conceding that it had not suffered any injury from its reliance on BellSouth's promise. Accordingly, it presses only the question of whether the district court erred in dismissing C&W's breach of contract claim.

While it is true that South Carolina law, as a general matter, prohibits the exercise of a contractually-provided, unilateral power to terminate a contract in a manner inconsistent with "equity and good conscience," no South Carolina authority has been cited for the proposition that the "equity and good conscience" requirement converts contracts that are otherwise terminable at will into contracts terminable only for cause. Indeed, authority exists to the contrary. In *Glaesner v. Beck/Arnley Corp.*, 790 F.2d 384 (4th Cir. 1986), we interpreted South Carolina's "equity and good conscience" limitation on the exercise of a unilateral termination provision as being inapplicable to terminations in furtherance of legitimate business purposes. Moreover, in a recent decision interpreting this standard, the South Carolina Supreme Court expressly relied on our interpretations of

South Carolina law, including *Glaesner. See Carolina Cable Network v. Alert Cable TV, Inc.*, 447 S.E.2d 199, 202 (S.C. 1994).

In the case before us, it was undisputed that BellSouth terminated its contract with C&W as a consequence of the new collective bargaining agreement it reached with its union, an agreement that offered the possibility of reducing BellSouth's operating costs and enhancing its overall labor relations. Thus, BellSouth exercised its power to cancel the contract in furtherance of legitimate business purposes. Moreover, it was undisputed that C&W profited handsomely from its relationship with BellSouth, in spite of what it deemed to be a premature termination. In these circumstances, we conclude that the termination cannot be reasonably described as having been malicious nor as being inconsistent with equity and good conscience.

For the reasons given, we affirm the judgment of the district court.

*AFFIRMED*