**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ESSENTIAL HOUSING DEVELOPMENT,
INCORPORATED,
<u>Plaintiff-Appellant,</u>

No. 95-3105

v.

LANDEV INVESTMENTS, INCORPORATED,
<u>Defendant-Appellee.</u>

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
Malcolm J. Howard, District Judge.
(CA-95-461-5-H)

Argued: July 10, 1996

Decided: August 13, 1996

Before WILKINSON, Chief Judge, and HAMILTON and
WILLIAMS, Circuit Judges.

_____

Reversed and remanded by unpublished opinion. Chief Judge Wilkin-
son wrote the majority opinion, in which Judge Williams joined.
Judge Hamilton wrote a dissenting opinion.

_____

**COUNSEL**

**ARGUED:** B. Gordon Watkins, III, Daniel Russell Taylor, Jr.,
PETREE STOCKTON, L.L.P., Winston-Salem, North Carolina, for
Appellant. Deborah R. J. Shupe, BERRY, ADAMS, QUACKEN-
BUSH & DUNBAR, P.A., Columbia, South Carolina, for Appellee.

**ON BRIEF:** James A. Merritt, Jr., BERRY, ADAMS, QUACKEN-BUSH & DUNBAR, P.A., Columbia, South Carolina; A. Todd Brown, HUNTON & WILLIAMS, Raleigh, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

WILKINSON, Chief Judge:

Appellant, Essential Housing Development ("EHD"), filed this declaratory judgment action in the Eastern District of North Carolina to settle a contract dispute. The district court dismissed the case for lack of personal jurisdiction over appellee, Landev Investments ("Landev"). Because we believe Landev possesses sufficient contacts with North Carolina to satisfy the state's long-arm statute and the Constitution, we reverse the judgment of the district court.

I.

EHD is a North Carolina company that develops low and moderate income housing. Landev is a South Carolina company, owned and controlled by Thomas Walker at the time of the contracts in question. The dispute before us involves an agreement between EHD and Walker (along with his partner Sandman) memorialized in two inter-dependent contracts. The first of the contracts, the "management agreement," transferred the management rights in twenty South Carolina housing projects from Walker and Sandman's partnership to a company with the same shareholders as EHD's predecessor in interest. The second contract, the "consulting agreement," arranged for monthly payments from EHD's predecessor in interest to Walker-owned Landev in return for supposed consulting services. The parties made the consulting agreement effective only upon execution of the management agreement.

2

Some time after signing the contracts, EHD grew concerned that the agreements violated Department of Agriculture regulations prohibiting payment for the transfer of housing project management rights. EHD alleges that the consulting agreement was an attempt to skirt the regulations by disguising illegal payments as consulting fees. In its view, the payments supposedly made for consulting were actually for the transfer of management rights. Although it made monthly payments of $3,185 to Landev, no consulting services were ever rendered. Moreover, a letter from Walker to EHD clarifying the consulting agreement specifically stated that if the transfer of the management rights did not occur, the consulting agreement would be void. Walker also candidly wrote that "if there is any reduction in the number of projects and/or apartment units, . . . then the amount to be paid for this management business will be reduced."

EHD dismissed its employee who negotiated the contracts, then filed this declaratory judgment action in North Carolina seeking to have the consulting agreement declared illegal and void. In response, Landev made a motion to dismiss the case for lack of personal jurisdiction, arguing that it did not have sufficient contacts in North Carolina to satisfy the state's long-arm statute. The district judge granted the motion.

II.

According to EHD, Landev has sufficient contacts to warrant the exercise of personal jurisdiction. We agree. North Carolina's "long arm statute," N.C. Gen. Stat. § 1-75.4, extends jurisdiction as far as the Constitution allows. Our analysis must therefore focus on whether Landev has sufficient contacts with North Carolina so that the exercise of personal jurisdiction would comport with due process.

Due process requirements are satisfied here. This case is controlled by English & Smith v. Metzger, 901 F.2d 36 (4th Cir. 1990), in which sufficient contacts were found where the defendant had less connection with the forum state than Landev has with North Carolina. In English & Smith, we held that Virginia could properly assert personal jurisdiction over a California attorney who hired a Virginia attorney to do legal work. Jurisdiction was based on the fact that the defendant

3

"transacted business" in Virginia by contacting the Virginia attorney and by making several phone calls and mailings into the state.

Landev's contacts with North Carolina are more extensive than those in English & Smith. Landev has a registered agent in North Carolina and had previously conducted business and owned property in the state. Although Landev protests that its previous business in North Carolina ceased in 1988, the company maintained its registered agent and its license to do business in North Carolina.

Further, Landev had contacts related to the very contracts before us. Negotiations commenced in 1992. Landev's owner, Thomas Walker, made several phone calls and mailings to and from North Carolina in negotiating the consulting agreement. EHD alleges, and the district judge assumed for purposes of his analysis, that Thomas Walker travelled to North Carolina on at least two occasions to conduct "crucial negotiations." These contacts clearly satisfy the requirements of due process. As was the case in Burger King Corp. v. Rudzewicz, 471 U.S. 462, 478-79 (1985), we have before us not simply a contract with an out-of-state party--which by itself is insufficient to establish personal jurisdiction--but also numerous accompanying connections with the forum state.

Despite the multiple contacts it had with North Carolina, Landev also maintains that the suit should be thrown out of that state because the consulting agreement was signed in South Carolina and subject to South Carolina law. However, the management agreement, which was necessary to effectuate the consulting agreement, was signed in North Carolina by Sandman, a North Carolina resident. The record belies Landev's assertion that the two agreements were entirely separate. The consulting agreement was contingent on the successful transfer of management rights in the management agreement. Walker's letter describing his understanding of the consulting agreement stated that "if there is any reduction in the number of projects and/or apartment units, . . . then the amount to be paid for this management business will be reduced." The two contracts were clearly related, and we must therefore consider the entire transaction. Both with regard to the consulting contract alone and with regard to the whole transaction, Landev had more than the necessary minimum contacts with North

4

Carolina to subject it to personal jurisdiction in a North Carolina federal court.

III.

For the foregoing reasons, we reverse the judgment of the district court and remand this case for further proceedings.

REVERSED AND REMANDED

HAMILTON, Circuit Judge, dissenting:

Because I cannot agree with the majority's conclusion that Landev Investments had sufficient "minimum contacts" with North Carolina to confer personal jurisdiction, I respectfully dissent.

It is well settled that a court may not exercise personal jurisdiction over a non-resident defendant unless the non-resident defendant has sufficient "minimum contacts" with the forum state. International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). In its most authoritative discussion of personal jurisdiction in contract cases, Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985), the Supreme Court explained:

> If the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot. The Court long ago rejected the notion that personal jurisdiction might turn on mechanical tests, or on conceptualistic theories of the place of contracting or of performance. Instead, we have emphasized the need for a highly realistic approach that recognizes that a contract is ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction. It is these factors--prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing--that must be evaluated in determining whether the defendant

5

purposefully established minimum contacts within the forum.

Id. at 478-79 (internal quotation marks and citations omitted). The Court in Burger King also stated "that there [must] be some act by which the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Id. at 475 (internal quotation marks and citations omitted).

Applying this test, the district court, after noting that: (1) Landev Investments is a South Carolina corporation; (2) the consulting services were to be performed in South Carolina; (3) South Carolina law governed the consulting agreement; and (4) Landev Investments had not done business in North Carolina since at least 1988, concluded:

> Although the number of visits defendant's agents made to North Carolina and what took place during those visits is disputed by the parties, the court finds that even if crucial negotiations did take place in North Carolina, this is not determinative for purposes of jurisdiction. The fact remains that the disputed contract was to be performed in South Carolina, by a South Carolina corporation, and according to South Carolina law. The defendant never attempted to enter the North Carolina market; instead, it was the plaintiff who sought to enter the South Carolina market. It therefore appears that the plaintiff more purposefully availed itself of the privilege of conducting activities in South Carolina than did the defendant in North Carolina. Consequently, the court finds that the plaintiff has failed to articulate sufficient acts committed by the defendant such that this court could exercise jurisdiction over the defendant without violating the due process clause of the Fourteenth Amendment.

(J.A. 42-43) (footnote omitted).

I agree with the district court's conclusion. There is nothing in the record to support the majority's conclusion that Landev Investments availed itself of the privilege of conducting business in North Carolina--performance of the consulting agreement was to be in

6

South Carolina by Landev Investments, a South Carolina corporation, and the consulting agreement was governed by South Carolina law. In addition, the consulting agreement--the very subject of this litigation--was signed in South Carolina. All the evidence in this case suggests that Landev Investments was not availing itself of the privilege of conducting activities in North Carolina, but rather South Carolina.

Furthermore, the majority's reliance on English & Smith is misplaced. Importantly, in that case, all of the Virginia attorney's work was performed in the forum state. In essence, English & Smith involved a joint venture involving legal representation. That joint venture contemplated that some of the legal work for the client would be performed in the forum state, and the California attorney directly benefited from all of the work performed by the Virginia attorney. Thus, when a non-resident defendant enters a joint venture with a resident and some of the work is to be performed in the forum state by the resident and the work performed by the resident directly benefits the non-resident, it is unquestionable that the non-resident defendant has availed itself of the privilege of conducting business in the forum state.

In this case, the evidence is not of comparable quality. Landev Investments was not seeking to have any work performed in North Carolina and was not trying to enter the North Carolina market. The consulting agreement was signed in South Carolina, was to be performed in South Carolina, and was governed by South Carolina law. In short, the district court correctly concluded that it did not have personal jurisdiction over Landev Investments. Because the majority concludes otherwise, I respectfully dissent.

7