**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ESSENTIAL HOUSING DEVELOPMENT,
INCORPORATED,
Plaintiff-Appellant,

v.

No. 98-1563

LANDEV INVESTMENTS, INCORPORATED,
Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
Malcolm J. Howard, District Judge.
(CA-95-461-5-H)

Argued: September 24, 1999

Decided: December 13, 1999

Before WILKINSON, Chief Judge, WILLIAMS, Circuit Judge, and
HAMILTON, Senior Circuit Judge.

_____

Vacated and remanded for further proceedings by unpublished per
curiam opinion.

_____

**COUNSEL**

**ARGUED:** B. Gordon Watkins, III, KILPATRICK STOCKTON,
L.L.P., Winston-Salem, North Carolina, for Appellant. James A. Mer-
ritt, Jr., BERRY, ADAMS, QUACKENBUSH & STUART, P.A.,
Columbia, South Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

The issue presented in this appeal is whether a letter signed by appellee, Landev Investments, Inc. (Landev), was signed before Landev entered into a consulting agreement with appellant, Essential Housing Development, Inc. (EHD), and therefore, merged into the consulting agreement by integration, or whether the letter was signed after Landev entered into the consulting agreement with EHD, and therefore, modified the consulting agreement. The district court granted Landev's motion for summary judgment, concluding that the letter was signed by Landev before Landev entered into the consulting agreement with EHD, and therefore, merged into the consulting agreement by integration. EHD now appeals. Because a genuine issue of material fact exists concerning when the letter was signed by Landev, we vacate the district court's judgment and remand for further proceedings consistent with this opinion.

I

EHD is a North Carolina corporation that develops and manages low and moderate income housing. Landev is a South Carolina corporation, owned and controlled by Thomas Walker (Walker), that provides consulting services. In 1993, Walker and EHD executed a series of contracts relating to the transfer of, inter alia, management rights in twenty housing projects in South Carolina.[1] As part of these transactions, EHD executed a consulting agreement (the Consulting

_____

[1] The negotiations were conducted between Walker and MBG Management, Inc. (MBG Management), the predecessor of Essential Housing Management, Inc. (EH Management). EH Management is a sister company of EHD, but for purposes of this appeal, EHD, EH Management, and MBG Management represent the same interests and will be referred to collectively as EHD.

2

Agreement or the Agreement) with Landev.**2** According to the terms of the Consulting Agreement, EHD was to pay Landev $3,185 per month from March 1993 through February 1998. In exchange, Landev agreed "to be available to provide consulting services, and to consult with and advise [EHD] as requested, in regard to the management and development of apartment projects." (Corrected Supplemental Appendix at 4).

The Consulting Agreement was reduced to writing and signed on February 8, 1993. In addition to containing the substantive terms of the contract, the Agreement also contained, inter alia, an integration clause, a clause allowing for amendment of the Agreement, and a governing law clause.**3** The integration clause stated: "This Agreement supersedes any and all prior negotiations, contracts, documents and/or understandings, written or oral, between the parties concerning the provision of consulting services by the Consultant." (Corrected Supplemental App. at 6). The clause allowing for amendments to the Agreement stated: "The parties consent and agree that the terms and conditions of this Agreement may be renegotiated . .. by the mutual consent of all parties hereto. Any such renegotiation or amendment shall be in writing and signed by all parties hereto." Id. Finally, the governing law clause stated: "This Agreement shall be governed by the laws of the State of South Carolina." Id.

The Consulting Agreement was signed by Gordon Blackwell (Blackwell), EHD's chief of operations, David Weil, an officer of EHD, and Thomas Walker, representing Landev. At some point in time in close proximity to the date the Agreement was signed, Walker signed a renegotiation letter (the Renegotiation Letter or the Letter), titled "Renegotiation of Consulting Agreement."**4** The Renegotiation

_____

**2** Although the 1993 transactions encompassed more than just the Consulting Agreement, at this time, the parties have not raised challenges beyond the scope of the Agreement or its alleged amendment. Accordingly, our recitation of the facts and procedural history will focus on the creation and alleged modification of the Agreement.

**3** Integration clauses are also referred to as merger clauses. See Black's Law Dictionary 812 (7th ed. 1999).

**4** The Renegotiation Letter was drafted by Blackwell on behalf of EHD but Walker was its sole signer.

3

Letter has a typed date on it of February 4, 1993, but it states: "This letter will confirm our understanding as to the Consulting Agreement between [EHD] and Landev Investments, Inc., which Agreement is dated February 8, 1993." (J.A. at 23). The date of "February 8, 1993" is handwritten. The Renegotiation Letter sets forth a number of clarifications and modifications to the Consulting Agreement. The one modification of import to this appeal allowed EHD to offset the fees it was required to pay to Landev should EHD cease to manage any of the twenty projects.

Neither party disputes that the Renegotiation Letter was signed by Landev. Landev, however, claims that the Renegotiation Letter was signed on the date reflected on the document, February 4, 1993, and thus, is inadmissible because it was merged into the Consulting Agreement. In contrast, EHD claims that the document was signed after the February 8, 1993 Consulting Agreement was signed, and thus, was a modification of the Agreement.

From March 1993 through December 1994, EHD made the payments that were due Landev under the Agreement. At the beginning of 1995, however, the partners who owned the housing projects being managed by EHD, one of whom was Walker, failed to pay certain disputed charges. Bud Clark, the president of EHD, wrote a memorandum to Walker and his partner, Arthur Sandman, in which he stated that EHD would cease managing six of the properties if the partners did not pay the money they owed. Acting on behalf of the partners, Sandman terminated EHD as manager of all twenty projects. EHD ceased managing six of the projects on May 31, 1995; it ceased managing thirteen more projects on June 30, 1995; and it ceased managing the final project on August 31, 1995.

After the partners terminated EHD as manager of all twenty projects, EHD brought suit against Landev in the United States District Court for the Eastern District of North Carolina on May 24, 1995. EHD sought a declaratory judgment that, because of the Renegotiation Letter, it was not obligated to pay Landev the remaining fees that it had agreed to pay under the Consulting Agreement.

Initially, on July 17, 1995, Landev filed a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal

4

Rules of Civil Procedure. The district court granted Landev's motion to dismiss on October 19, 1995. On appeal, this court, finding that Landev had sufficient contacts with North Carolina for the district court to exert personal jurisdiction over it, reversed the district court's judgment and remanded the case for further proceedings. See Essential Hous. Dev., Inc. v. Landev Invs., Inc., No. 95-3105, 1996 WL 453463 (4th Cir. Aug. 13, 1996).

On remand, Landev answered EHD's complaint and filed a counterclaim alleging that it was entitled to receive the additional payments. The parties engaged in discovery and then filed cross-motions for summary judgment. EHD asserted that the Renegotiation Letter modified the Consulting Agreement, and therefore, it no longer owed Landev any more fees because it had stopped managing all twenty projects. Landev argued that because the Renegotiation Letter was signed before the Consulting Agreement was executed, the Renegotiation Letter merged into the Consulting Agreement. Therefore, Landev argued, the integration clause in the Consulting Agreement nullified the Renegotiation Letter. On January 3, 1998, the district court denied EHD's motion and granted Landev's motion in part.

The district court found that "[u]nder South Carolina law, a merger clause such as the one embodied in the consulting agreement at issue in this case expresses the intention of the parties to treat the writing as a complete integration of their agreement." (J.A. at 306-07). The district court acknowledged that the parties subsequently could modify a completely integrated agreement. According to the district court, however, the parties could not attempt to change the Consulting Agreement by the admission of "parol evidence of prior or contemporaneous agreements not included in the original writing. Because the February 4, 1993 letter from Walker preceded the completely integrated February 8, 1993, consulting agreement, the court may not properly consider Walker's letter as modifying the terms of the February 8 agreement." Id. at 307.

Focusing solely on the February 4, 1993 date typed on the Renegotiation Letter, the district court held that "[a]s a matter of law, the parties could not have renegotiated the completely integrated agreement before it became final." (J.A. at 307). Based on these findings, the district court granted partial summary judgment to Landev concluding

5

that Landev was entitled to $114,660, the fees from the Consulting Agreement from March 1995 to February 1998 (thirty-six months at $3,185 a month).**5**

EHD filed a motion for reconsideration on January 13, 1998, and Landev moved for an award of attorney's fees on January 26, 1998. On March 6, 1998, the district court entered judgment in favor of Landev in the amount of $177,885.21, which included $114,660 for the unpaid fees and $63,225.21 for attorney's fees. **6** On April 6, 1998, EHD filed its notice of appeal.

II

This court reviews a district court's grant of summary judgment <u>de novo</u>. <u>See Jakubiak v. Perry</u>, 101 F.3d 23, 26 (4th Cir. 1997). Summary judgment should only be granted if a party's submissions to the court "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "In deciding whether facts are in dispute, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in his favor." <u>Jakubiak</u>, 101 F.3d at 26 (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986)). The party moving for summary judgment has the burden of demonstrating that the Rule 56(c) test is satisfied and that there is no genuine issue as to any material fact. <u>See Catawba Indian Tribe v. South Carolina</u>, 978 F.2d 1334, 1339 (4th Cir. 1992).

_____

**5** It is undisputed that EHD paid Landev the required fees through December 1994. It is also undisputed that EHD did not pay Landev any fees after February 1995. The parties, however, do dispute whether EHD paid the fees for January and February 1995, months in which EHD still managed all the properties. EHD contends that it made payments for January and February 1995, whereas Landev claims that EHD stopped paying the fees in December 1994. On this issue, the district court held that summary judgment was not appropriate because a genuine issue of material fact existed. Landev later withdrew that part of its claim in light of the district court's grant of summary judgment.

**6** The Consulting Agreement contained a clause requiring the defaulting or breaching party to pay "all costs, including reasonable attorney's fees, incurred by the aggrieved party in prosecuting said default or breach." (Corrected Supplemental App. at 6).

A

EHD asserts that the district court erred in finding that no genuine issue of material fact existed as to whether the Renegotiation Letter modified the Consulting Agreement. EHD points to the fact that, although the Renegotiation Letter was dated February 4, 1993, the Letter itself references the later-dated Consulting Agreement. In addition, EHD notes that Blackwell testified that the Renegotiation Letter was signed at a later date and that it modified the Consulting Agreement. Therefore, based on this evidence, the district court could not have found that no genuine issue of material fact existed.

Landev claims that the Renegotiation Letter is invalid as a matter of law because the Letter, having been dated/signed on February 4, 1993, preceded the February 8, 1993 Consulting Agreement, and thus, was merged into the Agreement. "Here the very terms of the Letter reveal that it predated the Agreement and, hence, was never intended to amend the Agreement at issue in this appeal as the Agreement had a merger clause." (Appellee's Br. at 8). Asserting that the Letter and the Agreement are unambiguous, Landev claims that, under the parol evidence rule, the district court properly refused to allow Blackwell's testimony to contradict the terms of the Letter.

"The parol evidence rule prevents the introduction of extrinsic evidence of agreements or understandings contemporaneous with or prior to execution of a written instrument when the extrinsic evidence is to be used to contradict, vary, or explain the written instrument." Gilliland v. Elmwood Properties, 391 S.E.2d 577, 581 (S.C. 1990). The parol evidence rule applies especially "when the written instrument contains a merger or integration clause." Id. Thus, where an agreement contains an integration clause expressing a clear intent that it supersedes all prior agreements, that clause will integrate any prior agreements into the final contract. See Edward Pinckney Assocs., Ltd. v. Carver, 364 S.E.2d 473, 475 (S.C. Ct. App. 1987). "It is well settled, however, that [the parol evidence] rule does not apply to subsequent modifications of the agreement. An integrated agreement may always be modified." Wilson v. Landstrom, 315 S.E.2d 130, 134 (S.C. Ct. App. 1984) (citations omitted).

Whether a contract is integrated, and therefore, whether evidence of prior or contemporaneous agreements is inadmissible, is a determi-

7

nation of law to be resolved by the district court. See John D. Calamari & Joseph M. Perillo, Contracts § 3-2, at 139-40 (3d ed. 1987) (noting that whether a contract was integrated was a question of intent and that "under the parol evidence rule the question of intent, whether actual or presumed, is ordinarily decided by the trial judge as a question of law"). Whether the parties entered into a modification after they signed an integrated contract is the equivalent of determining whether the parties have entered into a subsequent contract which is a question of fact that should be left to the jury unless no reasonable juror could find that a modification existed. See Prestwick Golf Club, Inc. v. Prestwick Ltd. Partnership, 503 S.E.2d 184, 186 (S.C. Ct. App. 1998) ("[I]f the evidence supports the existence of a contract, the issue should be submitted to a jury."); see also Columbia Hyundai v. Carll Hyundai, Inc., 484 S.E.2d 468, 469-70 (S.C. 1997) (holding that "the matter of the existence of a contract was properly submitted to the jury").

Because neither party disputes that the Consulting Agreement is an integrated contract or that if the Renegotiation Letter was signed after the Agreement, and met the other requirements of a contract, it modifies the Consulting Agreement, the dispositive issue before the district court was whether the Renegotiation Letter was signed before or after the Consulting Agreement. If the Renegotiation Letter was signed before the February 8, 1993 Consulting Agreement, then the Letter was merged into the Agreement by the integration clause. If it was signed after the Consulting Agreement, then the Renegotiation Letter is a modification of the Agreement.

To determine when the Renegotiation Letter was signed the parties submitted the following evidence: (1) the Renegotiation Letter, which contained a typed date of February 4, 1993, but which references and purports to modify the February 8, 1993 Consulting Agreement; (2) the deposition testimony of Blackwell that states, without qualification, that the Consulting Agreement was signed prior to the Renegotiation Letter; (3) the deposition testimony of Walker, in which he initially is uncertain as to whether the Renegotiation Letter modified the Consulting Agreement but later denies such a modification in an errata to his deposition; and (4) the affidavit of Walker, in which he claims that the "Letter of February 4, 1993 that EH claims modifies

8

the Agreement was signed before the final understanding as to the terms of the Agreement was reached," (J.A. at 242).

The evidence submitted is not conclusive as to the issue of when the Letter was signed. Landev asserts that the February 4, 1993 date is an unambiguous term, and therefore, the district court "properly refused to allow Blackwell's testimony (which was ambiguous) to contradict the terms of the Letter." (Appellee's Br. at 8). Landev's assertion and the district court's conclusion ignore the powerful evidence--Blackwell's testimony and the language of the Letter-- that contradicts a finding that the Letter was signed on February 4, 1993.

The Renegotiation Letter's date is internally inconsistent with its title--"Renegotiation of Consulting Agreement"--and its text. The Letter indicates that a consulting agreement was in existence, and had been signed, prior to the Letter. The Renegotiation Letter states: "As we have discussed, and as I have agreed, the Consulting Agreement shall be renegotiated under the following circumstances." (J.A. at 23). The term "renegotiation" also raises an inference that Landev and EHD had already entered into some sort of agreement. Walker acknowledges that he signed the Renegotiation Letter, but claims that the Letter "was never meant to be part of the agreement as finally established." (J.A. at 242). Why anyone would sign a letter purporting to be a renegotiation of a consulting agreement prior to entering into the consulting agreement itself is not explained. Nor has any evidence been submitted that shows that Walker had signed an earlier consulting agreement.

These inconsistencies alone would appear sufficient to raise a genuine issue of material fact. Viewed in conjunction with Blackwell's unequivocal statement that the Consulting Agreement was signed prior to the Renegotiation Letter, one would be hard pressed to find that no genuine issue of material fact exists. In arriving at its conclusion, it is clear that the district court looked at nothing more than the February 4, 1993 date indicated on the Renegotiation Letter. The date, however, which the district court appropriately notes "is unambiguous and prominently centered as the first line of its text," read in conjunction with the main body of the Letter renders the entire document ambiguous as to the date it was actually signed.

9

B

Landev argues that, even if a genuine issue of material fact exists as to whether the Renegotiation Letter was signed after the Consulting Agreement, we can affirm the district court's grant of summary judgment in its favor based on several alternative theories. We disagree.

First, Landev argues that the Renegotiation Letter cannot constitute a valid modification because it was signed by only one party, and therefore, did not conform with the amendment clause of the Consulting Agreement. This argument, however, is unpersuasive under South Carolina law. South Carolina law provides that a"written contract may be modified by oral agreement even if the contract expressly states that all changes must be in writing." Koontz v. Thomas, 511 S.E.2d 407, 411 (S.C. Ct. App. 1999); cf. Freeman v. Stanbern Const. Co., 106 A.2d 50, 54 (Md. 1954) ("The rule has been accepted by the Courts, both State and Federal, that, even though a written contract stipulates that it may not be varied except by an agreement in writing, nevertheless the parties, by a subsequent oral agreement, may modify it by mutual consent."); 17A Am. Jur. 2d Contracts § 526 (1991) (citing cases). The rationale behind this rule is that once a contract exists, the parties are free to modify the contract "in any manner they choose, notwithstanding, agreement prohibiting its alteration except in a particular manner." Evatt v. Campbell, 106 S.E.2d 447, 450 (S.C. 1959) (quoting Mebane v. Taylor, 162 S.E. 65, 67 (1932)); see also Fisher v. Tiffin, 551 P.2d 1061, 1063 (Or. 1976) ("`Parties to a contract can not [sic], even by an express provision in that contract, deprive themselves of the power to alter or vary or discharge it by subsequent agreement.'" (quoting 3A Corbin on Contracts § 763, at 531 (1960))); 17A Am. Jur. 2d Contracts § 520 (1991) (citing cases). Therefore, because a "written contract is valid [under South Carolina law] if one party signs it and the other acquiesces," Bishop Realty, 355 S.E.2d at 300, assuming the other requirements of a valid contract were met, the Renegotiation Letter was a valid modification.

Second, Landev asserts that the statute of frauds required both parties to sign the Renegotiation Letter for it to be a valid modification. The South Carolina statute of frauds, however, only requires that an agreement "or some memorandum or note thereof shall be in writing and signed by the party to be charged therewith ." S.C. Code Ann.

10

§ 32-3-10 (Law. Co-op. 1991) (emphasis added). The Renegotiation Letter is a writing that was signed by Landev, and thus, it satisfies the statute of frauds. See Smith v. McClam, 346 S.E.2d 720, 723 (S.C. 1986) (holding that a letter "prepared by a party to a contract . . . may constitute a memorandum sufficient to satisfy the statute of frauds although it is not delivered to the other contracting party and was neither intended for nor known to him").

Finally, Landev argues that the Renegotiation Letter was invalid because it was not supported by consideration. The district court, however, never addressed the consideration issue because it held that the Renegotiation Letter was merged into the Consulting Agreement, and therefore, inadmissible. Whether the Renegotiation Letter was supported by adequate consideration is a fact intensive inquiry that is better left to the district court on remand. Accordingly, this final argument does not provide a basis for upholding the district court's grant of summary judgment in favor of Landev.

III

In viewing the record and all reasonable inferences drawn from it in a light most favorable to EHD, a reasonable juror could find that the Renegotiation Letter was in fact signed after the Consulting Agreement. Such a factual determination would entitle EHD to offset the amount of fees it owes to Landev. Thus, a genuine issue of material fact existed and the district court erred in awarding summary judgment to Landev. Accordingly, we vacate the district court's judgment and remand for further proceedings consistent with this opinion.

VACATED AND REMANDED FOR
FURTHER PROCEEDINGS

11